OPINION *Page 2 
{¶ 1} Plaintiff-appellant Margaret Musleve appeals the October 4, 2007 Judgment Entry of the Stark County Court of Common Pleas, Domestic Relations Division, granting a final decree of divorce between Appellant and Defendant-appellee Jeffrey Musleve.
 STATEMENT OF THE FACTS AND CASE {¶ 2} The parties were married on June 4, 1983. There were three children born of the marriage. At the time of trial, two of the children were emancipated.
 {¶ 3} Appellee is a Chief Financial Officer for Blackhawk Accounting, earning $105,000.00 per year. Appellant is employed part-time as a pharmacist with Finney Drugs, capable of earning $83,200 per year if employed full-time.
 {¶ 4} On October 4, 2007, the trial court granted a final entry decree of divorce distributing marital assets and liabilities, along with awarding custody of the one minor child.
 {¶ 5} On November 2, 2007, Appellant filed the within appeal, asserting as error:
 {¶ 6} "I. THE TRIAL COURT ERRED BY ALLOCATING 2 AMOUNTS OF WIFE'S (APPELLANT) FINNEY'S 401K LINCOLN FINANCIAL RETIREMENT AS AN AWARD TO WIFE WHEN ONLY 1 AMOUNT EXISTS. THE TRIAL COURT'S PROPERTY AWARD TO WIFE IN FINAL ENTRY LISTED 2 AWARDS TO WIFE: FINNEY'S 401K AMOUNT $34,293 AND LINCOLN FINANCIAL AMOUNT $41,626.
 {¶ 7} "II. THE TRIAL COURT ERRED BY ALLOCATING AN "AWARD' FROM THE COLLEGE ADVANTAGE ACCOUNT; THAT NEVER EXISTED (TO AWARD.) *Page 3 
PLAINTIFF WAS "AWARDED' THE AMOUNT OF $31,100 BASED ON THE FRAUDULENT TESTIMONY OF DEFENDANT. THE DEFENDANT COMMITTED PERJURY.
 {¶ 8} "III. THE TRIAL COURT'S DIVISION OF PROPERTY LISTED IN THE KIKO INVENTORY WAS UNFAIRLY PREJUDICIAL TO THE APPELLEE THAT INCLUDED THE PLAINTIFF'S (APPELLANT) GIFTS AND FAMILY HEIRLOOMS AWARDED TO THE APPELLEE.
 {¶ 9} "IV. THE TRIAL COURT ERRED BY ALLOWING THE DEFENDANT (APPELLEE) TO KEEP THE DODGE DAKOTA TRUCK WHILE THE PLAINTIFF (APPELLANT) CONTINUES TO PAY FOR THE TRUCK.
 {¶ 10} "V. THE TRIAL COURT ERRED BY NOT INCLUDING THE APPELLEE'S WELLPOINT STOCK AS A MARITAL ASSET.
 {¶ 11} "VI. THE TRIAL COURT ERRED BY SKIPPING THE SONY CREDIT CARD THAT STILL HAS A BALANCE OF THE BEDROOM SUITES THAT THE DEFENDANT (APPELLEE) REMOVED FROM THE PLAINTIFF'S (APPELLANT) HOME. PLAINTIFF (APPELLANT) CONTINUES TO PAY FOR THE SONY CREDIT CARD AS MENTIONED IN THE TRANSCRIPTS.
 {¶ 12} "VII. THE TRIAL COURT ERRED BY OMITING [SIC] THE 2003 HARLEY DAVIDSON MOTORCYCLE AS A MARITAL ASSET TO DIVIDE, AS IT WAS PURCHASED WITH THE FAMILY'S HOME EQUITY LINE OF CREDIT ON 9-14-02.
 {¶ 13} "VIII. THE TRIAL COURT ERRED BY RECORDING ONLY HALF OF THE SERIES EE BONDS VALUE AND BY ALLOWING THE DEFENDANT (APPELLEE) TO *Page 4 
KEEP ALL OF THE BONDS (INCLUDING BONDS THAT WERE EXCLUSIVELY IN THE PLAINTIFF'S (APPELLANT'S) NAME).
 {¶ 14} "IX. THE TRIAL COURT OMITTED THE $85,090.86 KEY BANK ACCOUNT (ENDING IN 0123) THE DEFENDANT (APPELLEE) DEPOSITED FUNDS INTO TRACED BACK TO THE YEAR 2000.
 {¶ 15} "X. THE TRIAL COURT ERRED BY LETTING THE DEFENDANT (APPELLEE) KEEP $17,681 FROM THE KEY BANK MM ACCOUNT ENDING IN #1937 THAT ACTUALLY BELONGED TO THE PLAINTIFF'S GREAT UNCLE WILLIAM H. BANKS.
 {¶ 16} "XI. THE TRIAL COURT ERRED BY ALLOWING THE PLAINTIFF'S ADULTERATED WAGE STATEMENT FROM THE DEFENDANT'S ATTORNEY AS A BASIS FOR THE CHILD SUPPORT CALCULATION, EVEN THOUGH THE PLAINTIFF'S EMPLOYER PRESENTED TO THE COURT THE TRUE WAGE STATEMENT.
 {¶ 17} "XII. THE TRIAL COURT ERRED BY OMITTING THE BLACKHAWK RETIREMENT OF THE DEFENDANT'S (APPELLEE) FROM THE PROPERTY PAGE OF THE FINAL ENTRY. THE TRIAL COURT SKIPPED THIS MARTIAL ASSET IN THE DIVISION OF MARITAL ASSETS.
 {¶ 18} "XIII. THE TRIAL COURT ERRED BY AWARDING THE $600 IN THE FIRST MERIT ACCOUNT TO THE PLAINTIFF (APPELLEE) WHEN THE PLAINTIFF HAD ALREADY OWNED THAT $600 FROM THE EXHIBIT D (MAGISTRATE 7-25-06) PERSONAL SPENDING ALLOCATION. *Page 5 
 {¶ 19} "XIV. THE TRIAL COURT ERRED BY CHARGING THE PLAINTIFF $2500 FOR CONTEMPT WHEN NO CONTEMPT WAS EVER PROVED BY THE DEFENDANT. THE TRIAL COURT SAW THE SAME (AND MORE) CHECKS WRITTEN BY THE DEFENDANT BUT NEVER CHARGED HIM WITH CONTEMPT."
 {¶ 20} Initially, we note, Appellant's brief exceeds the maximum page length prescribed by this Court's Local Rule 10. Accordingly, we shall address only the first thirty pages of Appellant's brief, exclusive of the assigned errors, issues presented and appendices.
 {¶ 21} We also note, it is the duty of Appellant, not this Court, to demonstrate her assigned error through an argument supported by citations to legal authority and facts in the record. State v. Taylor(Feb. 9, 1999), 9th Dist. No. 2783-M; App. Rule 16(A)(7). "It is not the function of this court to construct a foundation for [an appellant's] claims; failure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal."Kremer v. Cox (1996), 114 Ohio app. 3d 41, 60.
 I. {¶ 22} In dividing marital property, a trial court possesses broad discretion to effect an equitable and fair property division. Worthington v. Worthington (1986), 21 Ohio St.3d 73, 21 OBR 371,488 N.E.2d 150; Cherry v. Cherry (1981), 66 Ohio St.2d 348, 20 O.O.3d 318, 421 N.E.2d 1293. Generally, the trial court is vested with broad discretion in determining the appropriate scope of property awards.Berish v. Berish (1982), 69 Ohio St.2d 318, 432 N.E.2d 183. Although its discretion is not unlimited, it has authority to do what is equitable. Cherry v. Cherry (1981), 66 Ohio St.2d 348,421 N.E.2d 1293. A reviewing court should not substitute its judgment for that of the trier-of-fact *Page 6 
unless, considering the totality of the circumstances, it finds that the court abused its discretion. Section 3(B), Article IV of the Ohio Constitution: App. R. 12; Briganti v. Briganti (1984),9 Ohio St.3d 220, 459 N.E.2d 896; Kaechele v. Kaechele (1988), 35 Ohio St.3d 93,518 N.E.2d 1197. "The mere fact that a property division is unequal does not, standing alone, amount to an abuse of discretion." Id.
at paragraph 2 of the syllabus.
 {¶ 23} In the first assignment of error Appellant argues the trial court erred in allocating two amounts relative to Appellant's 401(K) account with Lincoln Financial Retirement. Appellant argues she only has one 401(K) account. As such, Appellant argues the trial court erred in attributing two separate amounts to her in the parties' property division.
 {¶ 24} Appellee testified at trial Appellant had a CVS/Pharmacy 401(K) and a Finney's, Inc. 401(K), supported by exhibits. Appellant did not challenge the exhibits. The trial court's October 4, 2007 Judgment Entry specifying the parties' Pensions/Retirement/Profit Sharing/Deferred Benefit lists a CVS Retirement in Appellant's name in the amount of $31,383, and a Lincoln Financial Finneys 401(K) in the amount of $41,626.
 {¶ 25} At trial, Appellant testified:
 {¶ 26} "Q. Ok. If you can turn to Exhibit 3-10. Starting with the first Exhibit. Can you identify what that is?
 {¶ 27} "A. That's CVS retirement account.
 {¶ 28} "Q. And who is it for?
 {¶ 29} "A. That's Margaret Musleve. *Page 7 
 {¶ 30} "Q. And what is the approximate date?
 {¶ 31} "A. That date is December 31, `05.
 {¶ 32} "Q. And what is the value of that account?
 {¶ 33} "A. Closing balance, twenty-six thousand, one hundred, seventy-four dollars and sixty cents ($26,174.60).
 {¶ 34} "Q. What is the next account?
 {¶ 35} "A. Next is the Finney's 401K.
 {¶ 36} "Q. What is the date of that?
 {¶ 37} "A. Date, ending 6-30-06.
 {¶ 38} "Q. And what is the value of the account on that date?
 {¶ 39} "A. Thirty-four thousand, two hundred, ninety-two dollars and seventy-five cents ($34,292.75).
 {¶ 40} "Q. And who's name is that account held in?
 {¶ 41} "A. Margaret Musleve."
 {¶ 42} Based upon the above, we find the trial court did not error in allocating Appellant's pension accounts. The first assignment of error is overruled.
 II. {¶ 43} In the second assignment of error, Appellant asserts the trial court erred in finding she engaged in financial misconduct relative to the Ohio College Advantage Account. Appellant argues the funds withdrawn from the account were utilized in paying her daughters room and board fees at Ohio State University.
 {¶ 44} The trial court's October 4, 2007 Judgment Entry states: *Page 8 
 {¶ 45} "The Court finds that the wife withdrew $30,900 of that account without the husband's knowledge. While she has testified that those funds all were expended on Britany's behalf, the husband testified that Britany received a full scholarship at Ohio State, including books. The Court finds that the wife failed to trace these expenditures and as such the Court finds that the expenditures of these funds which were intended to be used for Britany's college education constitutes financial misconduct on her part."
 {¶ 46} Appellant maintains Britany's scholarship from the Air Force was tuition only, with a stipend for textbooks. She asserts she paid for all additional expenses incurred, including those not paid for by the College Advantage Fund.
 {¶ 47} At trial, Appellant testified:
 {¶ 48} "Q. You heard your husband's testimony regarding the removal of amounts from the Ohio Trust, that was um. .set aside for the education of your children.
 {¶ 49} "A. Yes.yes.
 {¶ 50} "Q. Did you make withdrawals from that account?
 {¶ 51} "A. Every quarter, I paid the bill. Ohio State is a paperless college. Everything has to be done on line. I had to pay the bill every quarter. Realize tutition is exactly half of room and board. So, if tuit.if Ohio State University costs, sixteen thousand ($16,000.00) a year, we, which it does. I believe it is eighteen thousand ($18,000.00) a year now. We would pay, the tuition was paid by the Air Force but we were still responsible for that nine thousand dollars ($9,000.00) per year. Room and board. Britney needed food, every month. Every month she came home, I bought her food. I have the receipts to prove that. I still have the receipt when we sent her to college, in September of `03. I opened a Target charge card for two thousand dollars *Page 9 
($2,000.00) to set up her. To get her ready for college. That's what it cost. I still have that also. So, my contention is, the money, Ohio State was paid for. Sixteen, eighteen thousand dollars a year, at Ohio State. Half of that was paid by the Air Force. The other nine thousand dollars ($9,000.00) was paid by us. Using Ohio Tuition money. It obviously was not enough money. The account had to be directly, the money went directly from the checking account to Ohio State University, it all had to be on line and I saved those receipts every quarter. So, I..I don't . . .
 {¶ 52} "Q. And we have provided the copies of the Bank accounts to the Court for the years that she was in college. Is that correct?
 {¶ 53} "A. Yes. Her college was all paid for. She doesn't owe any money and I paid for it every quarter. I had to.
 {¶ 54} "Q. So, is it fair to say, whether the money was applied directly from the Ohio Trust to Ohio State or it passed through the marital accounts, that . . . martial funds paid for all of the expenditures for Britney's college?
 {¶ 55} "A. Yes . . . Ohio State . . . the entire Ohio Tuition went to pay Britney's college expenses and I just need to clarify that.
 {¶ 56} "Attorney Davies: May I approach, Your Honor.
 {¶ 57} "The Court: You may.
 {¶ 58} "Q. I'm handing you what has been marked as Exhibit 4-1. Can you identify that document?
 {¶ 59} "A. This is once again, a quick pay . . . at Ohio State. I did this every quarter.
 {¶ 60} "Q. And what is the date of that particular payment? *Page 10 
 {¶ 61} "A. This was, Ohio State wanted a payment on September 20th, 2003. First payment made was one thousand, seven hundred, thirteen dollars ($1,713.00). That was to cover a portion of her fees for that quarter. Her tuition was paid for but the room and board and everything else was as much as the tuition and we were responsible for that.
 {¶ 62} Tr. at 164-168.
 {¶ 63} On cross, Appellant continued:
 {¶ 64} "Q. Um . . . this is from 2002. My understanding is, is that the only time that was rent was paid, was during her freshman year. And that the rest of the time, she was on complete scholarship.
 {¶ 65} "A. That's not true. 100% we can call Ohio State.
 {¶ 66} "Q. Well, we can't call Ohio State because you're on the stand today. Did you call Ohio State and get me the documents today?
 {¶ 67} "A. I brought the documents proving that we paid, eight to nine thousand dollars, every year for her related college expenses. I proved that.
 {¶ 68} "Q. You didn't introduce them. Your child was not on scholarship?
 {¶ 69} "A. For what portion of her bill? You need to explain that.
 {¶ 70} "Q. And why did you take in recent months, why did you take ten thousand dollars ($10,000.00) out of Dan's?
 {¶ 71} "A. Because our property taxes were never ever paid because we never had a family savings account. The property taxes came every six (6) months. We could not go to our savings account and withdrawal the money and pay the taxes, because we had no funds. *Page 11 
 {¶ 72} "* * *
 {¶ 73} "Q. Well, you were under a restraining order. And within the last couple of months, you took ten thousand dollars ($10,000.00) from your son's college fund to pay bills.
 {¶ 74} "A. That..
 {¶ 75} "Attorney Davies: Objection.
 {¶ 76} "The Court: Overruled.
 {¶ 77} "A. What was your question?
 {¶ 78} "Q. Well, you heard it.
 {¶ 79} "A. The bills, our house bills were never paid.
 {¶ 80} "Q. Did you pay five thousand ($5,00.00) of that to any Attorney?
 {¶ 81} "Attorney Davies: Objection.
 {¶ 82} "The Court: Overruled.
 {¶ 83} "Q. Did five thousand ($5,000.00) of that go to Arnie Glantz?
 {¶ 84} "A. That was on that um . . . that credit card . . . it was on a credit card to Arnie Glantz.
 {¶ 85} "Q. Did you, did you take ten, you took ten thousand dollars ($10,000.00) from Dan's account, in the past couple of months, while you were under a restraining order, not to remove any funds from [sic] source. Did you not take it. Did you take it or did you not?
 {¶ 86} "A. Well, Jeff, took money. That was to pay the property taxes, our house went into foreclosure. *Page 12 
 {¶ 87} "Q. So, the Court orders you not to take it and you as the new judge, decide you can take ten thousand dollars ($10,000.00) from the account . . . and pay whoever you want to pay."
 {¶ 88} Tr. at 166-168.
 {¶ 89} Appellee testified at trial:
 {¶ 90} "Q. Yes . . . Ok. Does Britney have an outstanding balance with her college?
 {¶ 91} "A. Not that I'm aware of.
 {¶ 92} "Q. Because in, is it fair to say, that you and your, and/or your wife paid for all of her college expenses that were not covered by scholarship?
 {¶ 93} "A. Britney's tuition was covered by scholarship and I paid her um . . . monthly rent. And I still pay her rent.
 {¶ 94} "Q. Is it also fair to say that, marital funds paid for her books, her food, some additional expenditures?
 {¶ 95} "A. Her first year.
 {¶ 96} "Q. And be. .
 {¶ 97} "A. No, her books, her books were covered through a stipend, through the Air Force, but we did. I mean, we'd send her checks for food. (Inaudible)
 {¶ 98} "Q. Alright. Is it also fair to say that you ha, that you and/or your wife have made direct payments to Ohio State?
 {¶ 99} "A. Minor, I mean. If certain small bills came up. I don't believe there was anything major that we made to Ohio State. *Page 13 
 {¶ 100} "Q. Do you consider payment a payment in the amount of nearly two thousand dollars ($2,000.00) minor?
 {¶ 101} "A. Well, I mean..that would probably be for the meal tickets and. .yeah. .I would.
 {¶ 102} "Q. Ok.
 {¶ 103} "A. Relative to college, yes, I would consider that minor.
 {¶ 104} Tr. at 139-141.
 {¶ 105} Upon review of the record and evidence presented, it was within the trial court's province to find Appellant had not sufficiently traced the funds from the college savings account to expenditures made on behalf of Britany's college education. The trial court did not abuse its discretion in finding Appellant engaged in financial misconduct, and allocating the award accordingly. The second assignment of error is overruled.
 III. {¶ 106} In the third assignment of error, Appellant asserts the trial court erred in including her family gifts and heirlooms in the division of marital property.
 {¶ 107} Appellant does not cite to facts in the record to support her argument. Rather, Appellant asserts vague references to certain pieces of property being her separate properties, which allegations are not supported by reference to record.
 {¶ 108} At trial, Appellant testified:
 {¶ 109} "Q. Turning back to Exhibit 3-17. You've had the opportunity to review the personal property list?
 {¶ 110} "A. Yes. *Page 14 
 {¶ 111} "Q. And it has been appraised?
 {¶ 112} "A. Yes.
 {¶ 113} "Q. The personal property as well, by Kiko's?
 {¶ 114} "A. Yes.
 {¶ 115} "Q. You have had the opportunity to review the list. Do you believe it is a complete list, of the majority of the personal property owned by you or your husband?
 {¶ 116} "A. Yes.
 {¶ 117} "Q. Do you, have you and your husband divided your personal property as of today's date?
 {¶ 118} "A. No.
 {¶ 119} "Q. Do you believe dividing the personal property will present a problem?
 {¶ 120} "A. Possibly.
 {¶ 121} "Q. Are there particular items, that you have received as gifts that are part of the personal property?
 {¶ 122} "A. Yes.
 {¶ 123} "Q. Can you identify those?
 {¶ 124} "A. List of items in the home. Ah . . . dining room, the Duncan Fife table. The silver flatware. The silver. China, hand painted plates. The piano was a gift. Ah . . . let's see that on the first page, I think I identified everything.
 {¶ 125} "Q. Anything else, go ahead.
 {¶ 126} "A. On the second page, the kitchen area. I had specified that's, I did ninety-nine percent (99%) of the cooking, everything in that kitchen area. Were not a gift but I had used all of that. Are we just talking about gifts? *Page 15 
 {¶ 127} "Q. Gifts to you, from family members or friends?
 {¶ 128} "A. Ok. That wood rocker, on the second page, is a gift. On the third page, just everything we bought. Ah . . . the fourth page, the gas high pressure washer, I got that as a Mother's Day gift. Ah . . . there's a bike, that was a, a Christmas gift. I'm on the last page, everything was purchased, also.
 {¶ 129} "Q. Without listing them, are you also able to identify that there are items in that list that were gifts to your husband?
 {¶ 130} "A. I don't know, as gifts per se.
 {¶ 131} "Q. Or items that he received as an inheritance or from family members?
 {¶ 132} "A. Well, when we had got married. He had finished that bedroom suite. He said that was his Grandfathers."
 {¶ 133} Tr. at 26-28.
 {¶ 134} Upon review, Appellant has not demonstrated the trial court abused its discretion in dividing the parties' marital and separate property. Appellant has not identified where in the record or recited the evidence to demonstrate error in the trial court's determination and division of the marital property. Again, the mere fact a property division is unequal does not, standing alone, amount to an abuse of discretion
 {¶ 135} The third assignment of error is overruled.
 IV. {¶ 136} In the fourth assignment of error, Appellant asserts the trial court erred in awarding the Dodge Dakota Truck to Appellee. Appellant argues the truck is a marital asset, and she continues to pay money owed on the balance. Appellant asserts the *Page 16 
loan is in her name, and she has paid for the truck since April 2007. Appellant concludes the loan is a marital debt, overlooked by the trial court.
 {¶ 137} At trial, Appellant testified:
 {¶ 138} "Q. Can you kindly turn to Exhibit 3-18. What is that Exhibit?
 {¶ 139} "A. 3-18 are the vehicles. By . . . they are the vehicles, titles.
 {¶ 140} "Q. They're the title to the vehicles. And how many titles are there?
 {¶ 141} "A. (Counting). .four(4).
 {¶ 142} "Q. And which vehicles are they?
 {¶ 143} "A. The first title is the `96 Olds. The second title is the Ford Escort. The third title is the Dakota Truck. Fourth is the 1984 Honda motor cycle.
 {¶ 144} "Q. Are those four (4) vehicles then, free and clear of any liens?
 {¶ 145} "A. The Dakota is still being paid for.
 {¶ 146} "Q. Ok. And who holds the loan for that vehicle?
 {¶ 147} "A. That is through Charter One.
 {¶ 148} "Q. And do you know the approximate due?
 {¶ 149} "A. Three thousand dollars ($3,000.00).
 {¶ 150} "Q. Ok. As to the other vehicles, not identified by title. Are there liens against those vehicles?
 {¶ 151} "A. No.
 {¶ 152} "Q. They are all free and clear?
 {¶ 153} "A. Yes.
 {¶ 154} "Q. Are you asking the court to aware [sic] you an equitable share of those vehicles? *Page 17 
 {¶ 155} "A. Yes."
 {¶ 156} Tr. at 25-26.
 {¶ 157} The trial court's October 4, 2007 Judgment Entry indicates a lien on the 1996 Dodge Dakota in the amount of $3,000.00. The trial court awarded Appellee the truck, for the benefit of the parties' son, but did not attribute the lien to his column in dividing the marital debts and liabilities. Accordingly, we remand the matter to the trial court for a re-division of the marital liabilities in consideration of the outstanding lien on the Dakota truck.
 {¶ 158} Appellant's fourth assignment of error is sustained.
 V. {¶ 159} In the fifth assignment of error, Appellant argues the trial court erred in not including Appellee's Wellpoint stock as a marital asset.
 {¶ 160} The stock has a value of $4,309.76. Appellant argues the omission caused an unequal division of marital assets. In his brief and in argument to this Court, Appellee concedes the stock was omitted from the trial court's distribution.
 {¶ 161} Accordingly, the trial court erred in omitting the Wellpoint stock from the division of marital property, and we remand the issue to the trial court for a re-division of marital property in consideration of the same.
 {¶ 162} The fifth assignment of error is sustained.
 VI. {¶ 163} In the sixth assignment of error, Appellant argues the trial court erred in omitting a Sony Credit Card balance for bedroom furniture removed by Appellee from the marital residence. *Page 18 
 {¶ 164} Appellant asserts she has paid on the balance since April 2007. Appellant maintains the debt should have been included in the distribution of the marital assets and liabilities.
 {¶ 165} Again, Appellant fails to reference where the evidence exists in the transcript to support her argument. As such, we do not find the trial court abused its discretion in rendering its division of marital property and debts. Accordingly, the sixth assignment of error is overruled.
 VII. {¶ 166} Appellant's seventh assignment of error asserts the trial court erred in finding the 2003 Harley Davidson Motorcycle to be separate property of Appellee.
 {¶ 167} At trial, Appellee testified:
 {¶ 168} "Q. Alright. Then we go into a Key Bank deposit, Uncle Bill. What's that?
 {¶ 169} "A. Um . . . that was eighteen thousand dollars ($18,000.00) of the life insurance, that I received, from his estate.
 {¶ 170} "Q. Ok. And how much was that life insurance, again?
 {¶ 171} "A. It was like eighteen thousand some, fifty.
 {¶ 172} "Q. Ok. So, you deposited eighteen thousand ($18,000.00) of it, in this account?
 {¶ 173} "A. Right.
 {¶ 174} "Q. Alright. What happened . . .
 {¶ 175} "A. I don't know what I did with the rest of it.
 {¶ 176} "Q. What happened to the rest of it?
 {¶ 177} "A. I don't know. *Page 19 
 {¶ 178} "Q. No, I mean, what happened to this eighteen (18)? Is it still there?
 {¶ 179} "A. (Inaudible), no. I used that, my wife and um. .went over to the Harley shop one day. We're looking at Harley's and I really never had, you know, other than a motor cycle in 1984, anything real nice. And no real nice assets, and we decided together, you know, she agreed to it, that I would buy a Harley with it.
 {¶ 180} "Q. Ok. So, you used Uncle Bill's money to buy a Harley?
 {¶ 181} "A. Yes.
 {¶ 182} "Q. And that is the check, then, or that's the next thing, ah . . . for eighteen thousand dollars ($18,000.00). Right?
 {¶ 183} "A. Yeah, we took out, took it out from Charter One, initially. And then, while we're over there and then I repaid that, I paid it all off, with this ah . . . this check here.
 {¶ 184} "Q. Ok. And doesn't that show it going to the ah . . . give us the paper trail on that.
 {¶ 185} "A. On, . . . well, there's the um . . . eighteen thousand ($18,000.00) going into my Key account on, looks like 12-13-03. And . . .
 {¶ 186} "Attorney Davies: Where, I'm sorry, where are we?
 {¶ 187} "Attorney Ake: I'm not sure which one your on. Which one are you on? Which . . .
 {¶ 188} "A. Um . . . I was back here.
 {¶ 189} "Q. That's `02 by the way.
 {¶ 190} "A. Oh . . . ok. Sorry. So, that's the money going in. And then, this is the check um . . . *Page 20 
 {¶ 191} "Q. For eighteen thousand ($18,000.00).
 {¶ 192} "A. Then you got the principal on the loan that we took out to Charter One bank, coming out of Key Bank.
 {¶ 193} "Q. Ok. Alright.
 {¶ 194} "A. So, that's the going out.
 {¶ 195} "Q. Alright. And you ended up with a Harley as a result of that. Right?
 {¶ 196} "A. Yeah."
 {¶ 197} Tr. at 104-106.
 {¶ 198} Upon review of the above, the trial court did not abuse its discretion in finding the Harley Davidson motorcycle to be the separate property of Appellee purchased with funds Appellee inherited from his mother and Appellant's uncle.
 {¶ 199} The seventh assignment of error is overruled.[1] *Page 21 
 {¶ 200} Based upon our disposition and analysis set forth above, the October 4, 2007 Judgment Entry of the Stark County Court of Common Pleas, Domestic Relations Division is affirmed, in part, reversed, in part, and remanded for further proceedings in accordance with the law and this opinion.
By: Hoffman, P.J., Gwin, J. and Delaney, J. concur *Page 22 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas, Domestic Relations Division is affirmed, in part, reversed, in part, and remanded for further proceedings in accordance with the law and this opinion. Costs to be divided equally between the parties.
[1] The remainder of Appellant's assignments of error will not be addressed as they are made after Appellant exceeded the page limit. *Page 1