[Cite as *Tincher v. Tincher*, 2020-Ohio-3352.]

wCOURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| MARIA L. TINCHER | : | JUDGES: |
| | : | |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff-Appellant | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | Case No. 2019 CA 00028 |
| | : | |
| ERIC J. TINCHER | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Fairfield County Court
of Common Pleas, Domestic Relations
Division, Case No. 15 DR 496



JUDGMENT:                    AFFIRMED



DATE OF JUDGMENT ENTRY:      June 16, 2020



APPEARANCES:

For Plaintiff-Appellant:              For Defendant-Appellee:

DEBRA J. DESANTO                      ALLEN B. AIMAR, JR.
887 South High Street                194 West Johnstown Rd.
Columbus, OH 43206                   Gahanna, OH 43230

*Delaney, J.*

{¶1}   Plaintiff-Appellant Maria L. Tincher appeals the June 7, 2019 Decree of Divorce issued by the Fairfield County Court of Common Pleas, Domestic Relations Division.

### FACTS AND PROCEDURAL HISTORY

{¶2}   Plaintiff-Appellant Maria L. Tincher filed a Complaint for Divorce on December 7, 2015. Defendant-Appellee Eric J. Tincher filed an Answer and Counterclaim. The matter came on for trial on May 15, May 16, and August 29, 2018.

{¶3}   The Decree of Divorce was filed on June 7, 2019. The judgment entry incorporated a well-written and thoroughly analyzed 46-page Findings of Fact and Conclusions of Law. We discuss the facts of this case and the trial court's findings relevant to the issues Wife raises in her appeal.

### Duration of Marriage

{¶4}   Wife and Husband were married on December 31, 1994. Two children were born as issue of the marriage. At the time of the divorce, both children were emancipated.

{¶5}   Husband and Wife filed for divorce in 2009 and 2010, but reconciled on both occasions. Wife testified that she and Husband separated in late November or early December 2015, with Husband moving out of the marital home in December 2015. Husband allegedly began residing with his paramour in January 2016.

{¶6}   Wife filed a Motion for De Facto Termination of Marriage on May 9, 2017. In her motion, she argued the termination date of the marriage was December 1, 2015.

{¶7}   In its Decree of Divorce, the trial court determined the duration of the marriage was from December 31, 1994 to the first day of trial, May 15, 2018.

**Spousal Support**

{¶8}   At the time of trial, Wife was 51 years old and Husband was 46 years old. Wife was in average health, recently recovering from surgery at the time of trial. Wife had taken some college classes but did not have a college degree. Husband completed four years of college but did not obtain his degree.

{¶9}   When the parties were married, Wife was employed with Bank One nka Chase Bank as a relationship bank and branch manager. She worked at Chase Bank from 1988 to 2001, when she left her employment to work at home. She was earning $50,000 when she left this employment in 2001. She began working for the Downey Company from 2001 to 2003 as a sales person who sold aftermarket packages for automobiles for automobile dealerships. She earned $55,000 to $60,000. She then started a corporation named the Tincher Group that provided human resource services. She worked as a human resources manager with the Tincher Group for six years, earning $20,000 to $30,000.

{¶10} In 2015, Wife found employment with PNC Bank in the consumer lending division as a market advisor for Central Ohio. Her starting salary in 2015 was more than $80,000. At the time of trial, her base salary was $90,900 and she had the opportunity to earn bonuses. She received a bonus in the amount of $7,000 in 2015. In 2016, her W-2 stated she earned $92,913.59, which included a bonus of $15,000-$16,000. In 2017, Wife earned $106,293.29.

{¶11} When they married, Husband worked as a sales person for a flower company. He entered the automobile sales industry in 1995. He started with selling cars and then trained on how to complete automobile financing. His next job was in automobile

sales financing. In 2000, he worked for Bob Caldwell Chevrolet as general manager where he earned as high as $15,000 per month. He had other jobs in the automobile sales industry, where he earned $8,000-$10,000 per month.

{¶12} At the suggestion of Wife's brother, Husband and Wife opened an automobile sales and service business in 2012. The corporation was named Rycota, LLC dba Tincher Auto Group ("TAG"). Husband, Wife, and their son worked at TAG. Husband was responsible for acquiring inventory and sales management. Wife had some responsibility for the management of the business. Wife attempted to manage the finances for TAG, but TAG hired an accountant as bookkeeper and comptroller. Wife and Husband received $5,000 per month from TAG to pay for their household expenses. Husband said TAG always operated in the arrears and was never successful.

{¶13} In January 2016, Husband left TAG and went to work as a car salesperson at Lindsay Automotive for a $2,500 per month draw. He left that position after five months to work at Crown Chrysler Jeep and Crown Automotive where he earned a $7,000 draw per month. His 2016 W-2 indicated his gross income was $119,333.52. In 2017, Husband's combined gross income from Crown Chrysler Jeep and Crown Automotive was $138,102.92. At the time of trial, Husband resided in Florida where he was employed as a car salesperson at Crown Mercedes. He testified he estimated he would earn $140,000 in 2018.

{¶14} While Husband and Wife were married, they enjoyed an upper-class lifestyle. In 2010, the couple purchased a 10,000 square feet home on located on 9-10 acres. The home was sold in 2017 for $840,000. They owned a cabin and land in Tennessee.

{¶15}  Wife requested the trial court award her spousal support in the amount of $2,000 per month. In its Findings of Fact and Conclusions of Law, the trial court engaged in a comprehensive analysis of the R.C. 3105.18(C)(1) spousal support factors. Based on its analysis of the factors, the trial court did not award Wife spousal support.

### Bank One/Chase Bank 401(K)

{¶16} Wife was employed with Bank One/Chase Bank from 1988 to 2001. During her employment, she contributed to a 401(K) savings plan from January 1, 1989 to the date she left her employment in 2001. Wife did not roll her Bank One/Chase Bank 401(K) plan or liquidate it when she left her employment. At trial, Wife claimed the value of the Bank One/Chase Bank 401(K) savings plan from 1988 to 1994 was separate property.

{¶17} Wife presented an account statement from January 1, 2000, showing the value of the Bank One/Chase Bank 401(K) was $8,354.37. Wife did not present any evidence as to the value of the Bank One/Chase Bank 401(K) before December 31, 1994, the date of marriage. Testimony at trial showed that Wife used the Bank One/Chase Bank 401(K) to pay for expenses during the marriage. The value of the account on December 31, 2014 was $105,317.17. Wife liquidated the Bank One/Chase Bank 401(K) and placed the remaining funds in a PNC Bank account. Wife used the funds from the PNC Bank account to pay expenses related to the Tincher Auto Group and the sale of the martial home. As of March 31, 2018, the PNC Bank account balance was $211.58.

{¶18} In its judgment entry, the trial court found that Wife failed to meet her burden to establish the alleged portion of the Bank One/Chase Bank 401(K) was separate property and the value of the alleged separate property. Because Wife did not meet her

burden, the trial court found the Bank One/Chase Bank 401(K) was a marital asset but it had no value at the time of divorce because it had been fully liquidated.

**PNC Bank 401(K)**

{¶19} Wife contributes to a 401(K) savings plan at her current place of employment, PNC Bank. As of April 30, 2018, the value of the PNC Bank 401(K) saving plan was $23,437.50. Wife took a $5,000 loan against the 401(K) for the down payment on her new home, reducing the balance to $18,437.50.

{¶20} In her Motion for De Facto Termination of Marriage, Wife requested the termination date of the marriage be December 1, 2015. Wife started her employment with PNC Bank in 2015. Because the marriage termination date was December 1, 2015, Wife argued the PNC Bank 401(K) savings plan would be separate property. In its judgment entry, the trial court found the PNC Bank 401(K) savings plan was a marital asset valued at $23,437.50. The trial court awarded Wife the value of the marital asset in the division of marital property.

**Temporary Orders**

{¶21} On February 25, 2016, the trial court issued temporary orders. At the time of the temporary orders, both children had reached the age of 18, but one child was still in high school. Husband was ordered to pay temporary child support, Wife would provide medical insurance for the child, and the parties were both liable for health care expenses not covered by private health insurance.

{¶22} The trial court ordered Wife to pay the mortgage on the marital residence due to her sole occupancy of the residence. At the time of the divorce, Husband and Wife owned two pieces of property in Tennessee: a cabin and an undeveloped piece of real

estate at Overlook Bay. Husband and Wife owned the Tennessee cabin and the mortgage was in both their names. The Tennessee real estate at Overlook Bay was owned by Husband and the Tincher Group. The parties listed the Tennessee cabin for rent on websites such as VBRO and Home Away. Husband was ordered to pay the mortgage payments on the Tennessee properties. The trial court ordered that all rents received from the Tennessee cabin were to be divided equally between the parties upon receipt.

{¶23} Wife filed a Motion for Contempt on June 6, 2016. Wife sought a contempt finding against Husband for the sale of a boat, sale of Tincher Auto Group property, and failure to provide an accounting of funds received in the course of business. Wife stated that Tincher Auto Group owned a boat, which Husband allegedly sold on February 25, 2016 in contravention of the temporary restraining order. Wife also argued that the Tincher Auto Group was located on property located in Pickerington, Ohio and she learned that Husband sold the property to her brother. An addendum to the real estate sales contract showed that the proceeds of the sale were held in the trust account of Wife's attorney.

{¶24} On November 8, 2016, the trial court modified the temporary orders to require that Husband and Wife equally divide the mortgage payments for the marital residence. On December 12, 2016, Husband filed a Request for a Rule 75 De Novo Hearing as Pertains to Temporary Orders of the Court and Modification of the Parties Previous Agreed Entry and Judgment Entry of the Court.

{¶25} At trial, Wife testified Husband failed to pay the mortgage on the Tennessee cabin. Wife made the payments on the mortgage to protect her credit. The Tennessee cabin was sold before trial and the proceeds of the sale in the amount of $3,092.35 were

being held in escrow. Wife also stated that Husband failed to give Wife one-half of the rent received from the Tennessee cabin. Husband allegedly received $15,186.03, to which Wife argued she was entitled to one-half. Husband admitted at trial that he did not comply with the temporary order as it was worded. Wife also testified that Husband failed to make timely payments on the Tennessee real estate.

{¶26} In the Findings of Fact and Conclusions of Law, the trial court found the proceeds of the sale from the Tennessee cabin and the rents received by Husband were marital assets. In the Divorce Decree, the trial court awarded Husband the rent received on the Tennessee cabin. The money from the sale of the Tennessee cabin was to be used to pay the liabilities owed by Tincher Auto Group and any remaining balance was to be split between the parties. The trial court further found the Tennessee real estate at Overlook Bay was a marital asset and the mortgage debt and HOA fee thereon was marital debt. The Tennessee real estate was to be sold and the proceeds equally divided between the parties.

{¶27} In its judgment entries, the trial court referred to Wife's Motion for Contempt and violation of the temporary orders. The trial court found that Wife failed to meet her burden to establish Husband was in violation of the orders. First, the trial court stated that Wife's motion did not indicate which judgment entries she claimed that Husband violated. Second, the trial court found Wife did not present evidence as to the value of the boat sold by Husband to permit the trial court develop an appropriate penalty. Third, while Wife argued Husband sold the Tincher Auto Group to her brother without her knowledge, there was evidence presented that Wife cooperated at some point in the sale of the business. Also, there was no evidence that the Tincher Auto Group was intentionally sold for a

deficient value. The trial court ultimately found Husband was in contempt of a temporary restraining order for selling the boat, which Husband could purge by compliance with the Divorce Decree.

**Financial Misconduct**

{¶28} Wife argued that Husband engaged in financial misconduct during their marriage and pending divorce action. On appeal, she raises two grounds for a finding of financial misconduct by Husband.

*Tincher Auto Group and Automotive Finance Corporation*

{¶29} Husband and Wife opened the Tincher Auto Group in January 2013. To finance the purchase vehicles to sell at TAG, Husband and Wife applied for lines of credit called "floor plans" with Automotive Finance Corporation ("AFC"). When Tincher Auto Group sold a vehicle, it would then pay off the line of credit for that vehicle with AFC. Once Tincher Auto Group paid AFC for the vehicle, AFC delivered the title to the vehicle which was then transferred to the new vehicle owner's name.

{¶30} In February 13, 2012, Husband and Wife signed the original note for AFC. To Wife's knowledge, the highest credit limit with AFC was $150,000. At trial, Wife introduced as an exhibit the U.S. Term Sheet Amendments for Promissory Notice and Security Agreement for AFC dated October 8, 2014 and September 23, 2015. The Amendments increased TAG's credit line with AFC to $450,000. Wife was not aware the credit limit was raised. Wife's signatures were on the Amendments but Wife testified she did not sign the Amendments. She testified that Husband forged her signatures on the Amendments.

{¶31} Husband testified that in the past, Husband and Wife had permission to sign each other's names because they were married.

{¶32} In 2015, Wife learned that AFC claimed it was not paid for vehicles sold by TAG. Wife individually hired an attorney to investigate the issues with AFC and incurred attorney fees in the amount of $13,144.98. Wife gave Husband $5,000 from her Bank One/Chase Bank 401(K) in accordance with a prior court order so that he could obtain his own legal counsel to address issues regarding TAG.

{¶33} In 2018, AFC filed suit against TAG, Husband, and Wife alleging it was owed $108,762.49. There was a settlement offer of $60,000 but the money had not been paid. There were funds available to pay the settlement amount from the proceeds of the sale of the marital home being held in the trust account of Wife's attorney. Wife, however, argued at trial that she should not be personally liable for the debt owed to AFC because she did not sign the Amendments and did not sell any cars with TAG. She further argued the proceeds of the sale of the marital home should not be used to settle the AFC litigation because the AFC debt was Husband's separate obligation.

{¶34} In its judgment entry, the trial court found Wife to be credible when she alleged that Husband forged her signature on the Amendments. Based on Husband's actions, the trial court stated Husband engaged in financial misconduct when he signed Wife's name to documents increasing the credit limit owed to AFC. The trial court further held, however, that the amount AFC alleged was owed in its lawsuit against TAG, Husband, and Wife was less that the $150,000 credit limit to which Wife initially agreed. As to Husband's actions of selling vehicles without paying AFC, the trial court found the evidence did not demonstrate that Husband did so for purposes of self-profit to the

exclusion of Wife or did so to intentionally interfere with Wife's property rights. The trial court found Husband's actions were poor business decisions that harmed both parties equally; therefore, any amount owed to AFC was a marital debt.

*2014 Mercedes*

{¶35} While Husband and Wife were together, Wife drove a 2014 Mercedes provided by TAG. When Husband left the marital home, he took the 2014 Mercedes. Husband then sold the automobile through TAG to his parents. He paid AFC for the 2014 Mercedes even though TAG had outstanding payments for multiple vehicles with AFC. Husband testified at trial that he did not know why he paid AFC for the 2014 Mercedes and not the other cars. He acknowledged payments to AFC would have reduced TAG's liability. At the time of trial, Husband's girlfriend drove the 2014 Mercedes.

{¶36} The trial court determined the evidence demonstrated the automobile was owned by Husband's parents and was not a marital asset.

**Attorney Fees**

{¶37} Wife argued that she incurred attorney fees on multiple fronts during the termination of her marriage. She hired an attorney to respond to the litigation involving the Tincher Auto Group. Not only was there a lawsuit involving AFC, the Ohio Attorney General and a car buyer had also brought actions against TAG, Husband, and Wife. Wife hired a separate attorney for the divorce proceedings and incurred fees in the amount of $39,379.93.

{¶38} The trial court considered Wife's argument under R.C. 3105.73(A) and ordered that Husband and Wife were responsible for their own attorney fees.

**Division of Marital Assets**

{¶39} The trial court attached Exhibit A to the Findings of Fact and Conclusions of Law that outlined the divisions of the marital property. In addition to the property divisions stated above, the trial court divided the remaining marital property, marital debt, and separate debt so that Wife was awarded $23,069.69 and Husband was awarded $16,756.03. The trial court acknowledged the division of marital property was equitable, not equal. The trial court considered the financial efforts of Wife to maintain the marital property for sale purposes without the assistance of Husband and that she incurred expenses to reduce the liability owed to AFC for TAG compared to the limited efforts of Husband.

{¶40} Wife filed an appeal on June 27, 2019 of the Decree of Divorce.

**ASSIGNMENTS OF ERROR**

{¶41} Wife raises seven Assignments of Error:

{¶42} "I. THE LOWER COURT ABUSED ITS DISCRETION IN NOT DETERMINING [AN] EARLIER DEFACTO [SIC] TERMINATION DATE OF MARRIAGE AND NOT ADDRESSING PLAINTIFF'S MOTION FOR DEFACTO [SIC] DETERMINATION OF MARRIAGE.

{¶43} "II. THE LOWER COURT ABUSED ITS DISCRETION BY NOT AWARDING SPOUSAL SUPPORT TO PLAINTIFF.

{¶44} "III. THE LOWER COURT ABUSED ITS DISCRETION WHEN IT DETERMINED THAT PLAINTIFF DID NOT PRESENT EVIDENCE AS TO THE SEPARATE PROPERTY COMPONENT OF HER CHASE 401(K) ACCOUNT.

{¶45} "IV. THE LOWER COURT ERRED IN FINDING THAT THE PLAINTIFF'S 401(K) WITH PNC BANK WAS A MARITAL ASSET VALUED AT $23,437.50.

{¶46} "V. THE LOWER COURT ERRED IN NOT FINDING THAT PLAINTIFF PRESENTED EVIDENCE OF DEFENDANT'S FAILURE TO ABIDE BY COURT ORDERS.

{¶47} "VI. THE LOWER COURT ABUSED ITS DISCRETION WHEN IT FOUND DEFENDANT COMMITTED OF [SIC] MARITAL FINANCIAL MISCONDUCT AND DID NOT PENALIZE DEFENDANT.

{¶48} "VII. THE LOWER COURT ERRED IN NOT AWARDING PLAINTIFF ATTORNEY FEES."

**ANALYSIS**

**I. DE FACTO TERMINATION DATE OF MARRIAGE**

{¶49} Wife argues in her first Assignment of Error that the trial court erred when it determined the duration of marriage was from December 31, 1994 until May 15, 2018, the first day of the divorce trial. Wife contends the term of marriage ended on December 1, 2015, the date of the parties' separation.

{¶50} R.C. 3105.171(A)(2) provides that, except when the court determines that it would be inequitable, the date of the final hearing is usually the date of termination of the marriage. Thus, R.C. 3105.171(A)(2) creates a statutory presumption that the proper date for the termination of a marriage, for purposes of the division of marital property, is the date of the final divorce hearing. *Beringer v. Beringer*, 2014-Ohio-5232, 24 N.E.3d 658, ¶ 16 (5th Dist.) citing *Bowen v. Bowen*, 132 Ohio App.3d 616, 630, 725 N.E.2d 1165 (9th Dist.1999). Therefore, it is presumed the date of the final divorce hearing is the

appropriate termination date of the marriage. *Glick v. Glick*, 133 Ohio App.3d 821, 828, 729 N.E.2d 1244 (8th Dist.1999). However, the trial court has broad discretion in choosing the appropriate marriage termination date and this decision cannot be disturbed on appeal absent an abuse of discretion. *See Berish v. Berish*, 69 Ohio St.2d 318, 321, 432 N.E.2d 183 (1982). A trial court should review the totality of the circumstances in determining the appropriateness of a de facto termination date. *See Boggs v. Boggs*, 5th Dist. Delaware No. 07 CAF 02 0014, 2008-Ohio-1411, 2008 WL 795305, ¶ 66.

{¶51} In support of her argument that December 1, 2015 is the correct date for termination of the marriage, Wife cites us to *Dill v. Dill*, 179 Ohio App.3d 14, 2008-Ohio-5310, 900 N.E.2d 654 (3rd Dist.), wherein the Third District Court of Appeals set out the factors a court may apply to determine whether it should find a date other than the final hearing date as the end of the marriage for purpose of property division. The court stated:

> Several factors should guide a trial court when determining whether a de facto termination of marriage date is equitable, including, but not limited to whether (1) the parties separated on less than friendly terms, (2) the parties believed the marriage ended prior to the hearing, (3) either party cohabited with another person during the separation, (4) the parties were intimately involved during the separation, (5) the parties lived as husband and wife during the separation, (6) the parties maintained separate residences, (7) the parties utilized separate bank accounts or were/were not financially intertwined (with the exception of temporary orders), (8) either party attempted to reconcile, (9) either party retained counsel, and (10) the parties attended social functions together or vacationed together. * * * No

one factor is dispositive; rather, the trial court must determine the relative

equities on a case-by-case basis.

*Elder v. Elder*, 5th Dist. Fairfield No. 2008-CA-74, 2009-Ohio-4868, 2009 WL 2963691,

¶¶ 17-20 citing *Dill*, at paragraph 11, citations deleted.

{¶52} The parties in *Dill* had been separated for more than ten years by the final

hearing. The appeals court discussed prior cases at some length, among them *Gullia v.*

*Gullia*, 93 Ohio App.3d 653, 639 N.E.2d 822 (8th Dist.1994) (three years separation

before the final hearing); *Rogers v. Rogers*, 10th Dist. Nos. 96APF10-1333 and 96APF01-

67 (Sept. 2, 1997), (four year separation prior to the final hearing); and *Crowder v.*

*Crowder*, 10th Dist. No. 98AP-1124 (Aug. 5, 1999) (seven year separation before the final

hearing). The *Dill* court found the length of time the parties were separated appeared to

be a significant factor in determining the de facto end of the marriage. *Dill* at paragraph

12, citations deleted.

{¶53} In this case, the parties had been separated for three years at the time of

the final hearing. Husband and Wife, however, were financially intertwined in the wrapping

up of the Tincher Auto Group. Wife was still involved in the business of the Tincher Auto

Group in 2015. Husband left Tincher Auto Group in 2016. There were multiple litigations

against Tincher Auto Group, Wife, and Husband pending at the time of the parties'

divorce. Wife gave Husband $5,000 from her Bank One/Chase Bank 401(K) to hire an

attorney to respond to the AFC litigation. Husband sold the Tincher Auto Group to Wife's

brother and Wife's attorney kept the proceeds of that sale in the attorney's trust account.

We conclude the trial court did not abuse its discretion in determining the marriage ended

on the date of the final hearing, rather than at the time the parties separated.

{¶54} The first Assignment of Error is overruled.

## II. SPOUSAL SUPPORT

{¶55} Wife argues in her second Assignment of Error that the trial court abused its discretion when it did not award spousal support to Wife. We disagree.

{¶56} A trial court has broad discretion in determining a spousal support award. *Neville v. Neville*, 99 Ohio St.3d 275, 2003–Ohio–3624, 791 N.E.2d 434; *Stevens v. Stevens*, 23 Ohio St.3d 115, 492 N.E.2d 131 (1986); *Blakemore v. Blakemore*, 5 Ohio St.2d 217, 450 N.E.2d 1140.

{¶57} R.C. 3105.18 governs spousal support. Subsection (C) states the following:

(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

{¶58} Trial courts must consider all the relevant factors listed in R.C. 3105.18(C). However, a trial court need not acknowledge all evidence relative to each and every factor listed in R.C. 3105.18(C) and we may not assume that the evidence was not considered. *Hutta v. Hutta*, 177 Ohio App.3d 414, 2008-Ohio-3756, 894 N.E.2d 1282 (5th Dist). The

trial court need only set forth sufficient detail to enable a reviewing court to determine that appropriateness of the award. *Id.*, citing *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 518 N.E.2d 1197 (1988).

{¶59} The trial court conducted a comprehensive 10-page analysis of the R.C. 3105.18(C) factors and determined that based on the factors, spousal support for Wife was not warranted. Our review of the evidence supports the trial court's determination as to spousal support. Wife and Husband had comparable educational backgrounds. During the marriage, Wife worked but Husband earned a higher income than Wife. When the parties separated, Wife obtained a position with PNC Bank, earning a four-figure salary at the time of trial. The salaries of Husband and Wife at the time of the hearing were comparable.

{¶60} We find no abuse of discretion for the trial court to find spousal support was not appropriate in this case after analyzing the R.C. 3108.15(C) factors.

{¶61} Wife's second Assignment of Error is overruled.

### III. BANK ONE/CHASE BANK 401(K)

{¶62} In her third Assignment of Error, Wife argues the trial court erred when it found the entirety of Wife's Bank One/Chase Bank 401(K) savings plan was a marital asset. We disagree.

{¶63} R.C. 3105.171(B) states in pertinent part that "[i]n divorce proceedings, the court shall * * * determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section. For purposes of this section, the court has jurisdiction over all property, excluding

the social security benefits of a spouse other than as set forth in division (F)(9) of this section, in which one or both spouses have an interest." There is a presumption in Ohio that an asset acquired during the course of the marriage is marital property, unless proved otherwise. *Haven v Haven*, 5th Dist. Ashland No. 12-COA-013, 2012-Ohio-5347, ¶ 23. Correspondingly, the definition of "separate property" includes "[a]ny real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage[.]" R.C. 3105.171(A)(6)(a)(ii).

{¶64} The characterization of property as marital or separate must be supported by sufficient, credible evidence. *Kess v. Kess*, 5th Dist. Delaware No. 15 CAF 10 0076, 2018-Ohio-1370, 2018 WL 1750932, ¶ 51 citing *Chase–Carey v. Carey*, 5th Dist. Coshocton No. 99CA1, 1999 WL 770172. The party to a divorce action seeking to establish that an asset or portion of an asset is separate property, rather than marital property, has the burden of proof by a preponderance of the evidence. *Passyalia v. Moneir*, 5th Dist. Stark No. 2016 CA 00182, 2017–Ohio–7033, ¶ 18 citing *Cooper v. Cooper,* 5th Dist. Licking No. 14 CA 100, 2015–Ohio–4048, ¶ 45, citing *Zeefe v. Zeefe*, 125 Ohio App.3d 600, 614, 709 N.E.2d 208 (1998).

{¶65} Trial court decisions regarding the classification of separate and marital property are not reversed unless there is a showing of an abuse of discretion. *Pletcher v. Pletcher*, 5th Dist. Muskingum No. CT2019-0002, 2019-Ohio-3625, 2019 WL 4267781, ¶ 15 citing *Valentine v. Valentine*, 5th Dist. Ashland No. 95COA01120, 1996 WL 72608, citing *Peck v. Peck*, 96 Ohio App.3d 731, 734, 645 N.E.2d 1300 (12th Dist.1994). In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment.

*Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). While the characterization of property as separate or marital must be supported by sufficient, credible evidence, the appellate court is not the trier of fact. Our role is to determine whether there is relevant, competent, and credible evidence upon which the factfinder could base his or her judgment. *Tennant v. Martin–Auer*, 188 Ohio App.3d 768, 936 N.E.2d 1013, 2010–Ohio–3489, ¶ 16, citing *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA–5758, 1982 WL 2911. This Court has consistently held that it cannot substitute its judgment for that of the trial court, and the Supreme Court has directed us not to conduct piece meal appeals of property divisions, but rather to look to the total distribution to determine whether it is equitable. *Haynes v. Haynes*, 5th Dist. Coshocton No. 2010-CA-01, 2010-Ohio-5801, 2010 WL 4868078, ¶ 38 citing *Briganti v. Briganti*, 9 Ohio St.3d 220, 459 N.E.2d 896 (1984); *Hostetler v. Hostetler*, 5th Dist. Stark Nos. 2018CA00052, 2018CA00054, 2019-Ohio-609, ¶ 19.

{¶66} At trial, Wife argued the value of her Bank One/Chase Bank 401(K) savings plan earned from 1988 to 1994 was separate property because it was accrued prior to the date of marriage. At trial, Wife presented an account statement from January 1, 2000, showing the value of the Bank One/Chase Bank 401(K) was $8,354.37. The value of the Bank One/Chase Bank 401(K) on December 31, 2014 was $105,317.17. There was no evidence before the trial court as to the value of the Bank One/Chase Bank 401(K) on the date of marriage. Wife did not submit evidence as to the value of the 401(K) earned prior to the date of marriage or records of her contributions to the 401(K) before the date of marriage.

{¶67} Based on the lack of evidence as to the value of the 401(K) that Wife alleged was separate property, the trial court found the Bank One/Chase 401(K) account was a marital asset. Wife contends this was an abuse of discretion because the trial court did not require the monetary value of the account on the date of marriage; rather, the trial court could compute the value of the separate asset by percentage. The value of the Bank One/Chase Bank 401(K) on December 31, 2014 was $105,317.17. Wife argues the trial court should have awarded her 46% of the value of the Bank One/Chase Bank 401(K) or $48,445.89, which equates to six years from 1988 to 1994.

{¶68} "R.C. 3105.171 expresses no specific way for the trial court to determine valuation." *Smoyer v. Smoyer*, 10th Dist. Franklin No. 18AP-365, 2019-Ohio-3461, 2019 WL 4039614, ¶ 40 citing *Banchefsky v. Banchefsky*, 10th Dist. No. 09AP-1011, 2010-Ohio-4267, ¶ 43, citing *Focke v. Focke*, 83 Ohio App.3d 552, 554, 615 N.E.2d 327 (10th Dist.1992). In order to make an equitable division of property, the trial court should first determine the value of the marital assets. *Passyalia v. Moneir*, 5th Dist. No. 2016 CA 00182, 2017-Ohio-7033, 95 N.E.3d 723, 2017 WL 3263785, ¶ 10 citing *Eisler v. Eisler* (1985), 24 Ohio App.3d 151, 152, 493 N.E.2d 975. In performing this function, the trial court has broad discretion to develop some measure of value. *Berish v. Berish*, 69 Ohio St.2d 318, 432 N.E.2d 183 (1982). Thus, "[t]he valuation of marital assets is typically a factual issue that is left to the discretion of the trial court." *Roberts v. Roberts*, 10th Dist. Franklin No. 08AP-27, 2008-Ohio-6121, 2008 WL 5049808, ¶ 18, citing *Berish, supra*. An appellate court will uphold " 'a trial court's determination of valuation which is based upon competent, credible evidence absent a showing of an abuse of discretion.' " *Banchefsky* at ¶ 43, quoting *Moro v. Moro*, 68 Ohio App.3d 630, 637, 589 N.E.2d 416 (8th Dist.1990).

{¶69} It was Wife's burden to demonstrate by a preponderance of the evidence that the Bank One/Chase Bank 401(K) was separate property and her further burden to present competent, credible evidence as to the value of the separate property. The trial court found Wife failed to meet her evidentiary burden and therefore, it could not calculate a value for the alleged separate property to perform its duty to equitably divide the marital and separate property. Wife presented to the trial court her own measure of value of the asset; however, Wife does not present case law stating the trial court was required to accept a party's proposed measure of value. Rather, the valuation of the assets is a factual issue left to the discretion of the trial court. Based on the record before us, we find the trial court did not abuse its discretion when it found it could not measure the value of the Bank One/Chase Bank 401(K) savings plan from 1988 to 1994.

{¶70} Wife's third Assignment of Error is overruled.

### IV. PNC BANK 401(K) SAVINGS PLAN

{¶71} In her fourth Assignment of Error, Wife argues the trial court erred when it found the PNC Bank 401(K) savings plan was a marital asset. She states that decision was based on the trial court's finding that the marriage termination date was the first day of trial.

{¶72} Wife began her employment with PNC Bank in 2015. Wife argued the de facto termination date of the marriage should be December 1, 2015. The trial court determined the termination date of the marriage was May 15, 2018, the first day of trial. If the marriage was terminated on December 1, 2015, the PNC Bank 401(K) savings plan could be argued to be Wife's separate property.

{¶73} Based on our determination of Wife's first Assignment of Error that the trial court did not abuse its discretion when it set the date of the final hearing as the date of termination of the marriage, we find Wife's fourth Assignment of Error is without merit.

{¶74} Wife's fourth Assignment of Error is overruled.

## V. VIOLATION OF TEMPORARY ORDERS

{¶75} Wife contends in her fifth Assignment of Error that the trial court erred when it only granted in part her motion for contempt and did not award her attorney fees.

{¶76} On February 25, 2016, the trial court issued temporary orders. Wife was ordered to pay the mortgage on the marital residence. Husband was ordered to pay the mortgage payments on the Tennessee properties. The trial court ordered that all rents received from the Tennessee cabin were to be divided equally between the parties upon receipt.

{¶77} Wife filed a Motion for Contempt on June 6, 2016. Wife sought a contempt finding against Husband for the sale of a boat, sale of Tincher Auto Group property, and failure to provide an accounting of funds received in the course of business.

{¶78} At trial, Wife testified Husband failed to pay the mortgage on the Tennessee cabin. The Tennessee cabin was sold before trial and the proceeds of the sale in the amount of $3,092.35 were being held in escrow. Wife also stated that Husband failed to give Wife one-half of the rent received from the Tennessee cabin. Husband allegedly received $15,186.03, to which Wife argued she was entitled to one-half. Husband admitted at trial that he did not comply with the temporary order as it was worded. Wife also testified that Husband failed to make timely payments on the Tennessee real estate.

{¶79} In the Findings of Fact and Conclusions of Law, the trial court found the proceeds of the sale from the Tennessee cabin and the rents received by Husband were marital assets. The trial court awarded Husband the rent received on the Tennessee cabin. The money from the sale of the Tennessee cabin was to be used to pay the liabilities owed by Tincher Auto Group and any remaining balance was to be split between the parties. The trial court further found the Tennessee real estate at Overlook Bay was a marital asset and the mortgage debt and HOA fee thereon was marital debt. The Tennessee real estate was to be sold and the proceeds equally divided between the parties.

{¶80} The trial court granted in part and denied in part Wife's motion for contempt. First, the trial court stated that Wife's motion did not indicate which judgment entries she claimed that Husband violated. Second, the trial court found Wife did not present evidence as to the value of the boat sold by Husband to permit the trial court develop an appropriate penalty. Third, while Wife argued Husband sold the Tincher Auto Group to her brother without her knowledge, there was evidence presented that Wife cooperated at some point in the sale of the business. Also, there was no evidence that the Tincher Auto Group was intentionally sold for a deficient value. The trial court found Husband was in contempt of a temporary restraining order for selling the boat, which Husband could purge by compliance with the Divorce Decree.

{¶81} Civil contempt is defined as that which exists in failing to do something ordered to be done by the court in a civil action for the benefit of the opposing party therein. *Mohr v. Mohr*, 5th Dist. Morgan No. 16AP0007, 2017-Ohio-1044, 2017 WL 1090984, ¶ 15, quoting *McKinney v. McKinney*, 5th Dist. Stark No. 2014CA00118, 2015

WL 1331886, ¶ 11–12 quoting *Beach v. Beach*, 99 Ohio App. 428, 431, 130 N.E.2d 164 (1955). The burden of proof for civil contempt is clear and convincing evidence. *Geary v. Geary*, 5th Dist. Delaware No. 14CAF050033, 2015-Ohio-259, 27 N.E.3d 877, ¶ 34, citing *Flowers v. Flowers*, 10th Dist. Franklin No. 10AP–1176, 2011-Ohio-5972.

{¶82} A trial court's decision regarding contempt will not be reversed absent an abuse of discretion. *Gunawardena v. Gunawardena*, 5th Dist. Delaware No. 14 CAF 06 0035, 2015-Ohio-2566, ¶ 1, citing *Beltz v. Beltz*, 5th Dist. Stark Nos. 2005CA00193, 2005CA00194, 2006-Ohio-1144. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore, supra*.

{¶83} Upon the trial court's examination of the evidence, it found Husband was in contempt for his violation of the trial court's temporary orders as to the sale of the boat. The evidence presented regarding the sale of the Tincher Auto Group did not support Wife's argument of contempt. Husband admitted at trial that he did not comply with the trial court's orders as to the rents for the Tennessee cabin. The record in this case shows that Husband repeatedly failed to comply with the trial court's orders, but considering the totality of the circumstances, the trial court attempted to equitably divide the parties' marital assets and debts considering Husband's lack of compliance. In its division of marital property, the trial court awarded Wife the PNC Bank 401(K) in the amount of $23,437.50 and Husband the rents from the Tennessee cabin in the amount of $14,286.03. The trial court also assigned the debts incurred from the sale of the boat to Husband. The trial court ordered Husband to purge his contempt by compliance with the Decree of Divorce (considering his record of non-compliance). Wife argues she should

have been awarded attorney fees for Husband's contempt, but there is no reference in her appeal to the record where she specified the attorney fees spent to address Husband's alleged violation of the trial court's orders or if she requested attorney fees pursuant to R.C. 3105.171(E)(4) based on Husband's contempt.

{¶84} We find no abuse of discretion by the trial court upon its determination of Husband's contempt. Wife's fifth Assignment of Error is overruled.

## VI. FINANCIAL MISCONDUCT

{¶85} In her sixth Assignment of Error, Wife contends the trial court erred when it found Husband engaged in financial misconduct when he signed Wife's name to the AFC documents, but did not reflect the finding in the division of marital assets and debts. Wife further argues Husband engaged in financial misconduct when he failed to pay AFC for the sale of cars and when he sold the 2014 Mercedes to his parents.

### AFC

{¶86} Husband and Wife originally signed a credit agreement with Automotive Finance Corporation to finance the floor plan for the Tincher Auto Group. Wife believed the highest credit limit with AFC was $150,000. In 2014 and 2015, Husband signed Wife's name to amendments to the original AFC note, which increased the credit limit to $450,000. Husband did not make Wife aware he increased the credit limit, nor did Wife give permission to Husband to sign her name. She testified that Husband forged her signatures on the Amendments.

{¶87} In 2018, AFC filed suit against TAG, Husband, and Wife alleging it was owed $108,762.49. On multiple occasions, TAG had failed to pay AFC after TAG sold a vehicle. Wife argued at trial that she should not be personally liable for the debt owed to

AFC because she did not sign the Amendments and did not sell any cars with TAG. The proceeds of the sale of the marital home should not be used to settle the AFC litigation because the AFC debt was Husband's separate obligation.

{¶88} In its judgment entry, the trial court found Husband engaged in financial misconduct when he signed Wife's name to documents increasing the credit limit owed to AFC. The trial court further held, however, that the amount AFC alleged was owed in its lawsuit against TAG, Husband, and Wife was less that the $150,000 credit limit to which Wife initially agreed. As to Husband's actions of selling vehicles without paying AFC, the trial court found the evidence did not demonstrate that Husband did so for purposes of self-profit to the exclusion of Wife or did so to intentionally interfere with Wife's property rights. The trial court found Husband's actions were poor business decisions that harmed both parties equally; therefore, any amount owed to AFC was a marital debt.

### 2014 Mercedes

{¶89} During the marriage, Wife drove a 2014 Mercedes provided by Tincher Auto Group. When Husband left, he took the automobile and sold it to his parents. He paid off the credit line for the vehicle with AFC. Husband's girlfriend was driving the vehicle at the time of trial. The trial court found the 2014 Mercedes was not a marital asset because it was owned by parents.

### Financial Misconduct

{¶90} Wife contends the evidence established that Husband engaged in financial misconduct, not merely made bad business decisions. A determination on financial misconduct rests on the facts and circumstances of each case. *Orwick v. Orwick*, 7th Dist. Jefferson No. 04 JE 14, 2005–Ohio–5055. As such, the trier of fact is given the duty to

determine the credibility of each party's assertions in determining financial misconduct. *State v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180 (1990); *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

{¶91} R.C. 3105.171 governs division of marital property. Subsection (E)(4) states: "If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." As stated by this court in *Kilpatrick v. Kilpatrick*, 5th Dist. Delaware No. 10 CAF 09 0080, 2011–Ohio–443, ¶ 29–30:

> The trial court has discretion in determining whether a spouse committed financial misconduct, subject to a review of whether the determination is against the manifest weight of the evidence. *Boggs v. Boggs*, Delaware App. No. 07 CAF 02, 2008–Ohio–1411 at paragraph 73, citing *Babka v. Babka* (1992), 83 Ohio App.3d 428, 615 N.E.2d 247. Financial misconduct implies some type of wrongdoing such as interference with the other spouse's property rights. *Bucalo v. Bucalo*, Medina App. No. 05CA0011–M, 2005–Ohio–6319. The burden of proving financial misconduct is on the complaining party. *Gallo v. Gallo*, 2002–Ohio–2815, Lake App. No. 2000–L–208.

{¶92} As found by this court in *Shalash v. Shalash*, 5th Dist. Delaware No. 12 CAF 11 0079, 2013–Ohio–5064, ¶ 24:

> To find financial misconduct, a court must look to the reasons behind the questioned activity or the results of the activity and determine whether the

wrongdoer profited from the activity or intentionally dissipated, destroyed, concealed, or fraudulently disposed of the other spouse's assets. *Thomas v. Thomas*, 2012–Ohio–2893, 974 Ohio App.3d 679, ¶ 63 (5th Dist.).

{¶93} On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). *See also, State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541; *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517. In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley* at ¶ 21. "In a civil case, in which the burden of persuasion is only by a preponderance of the evidence, rather than beyond a reasonable doubt, evidence must still exist on each element (sufficiency) and the evidence on each element must satisfy the burden of persuasion (weight)." *Id.* at ¶ 19.

{¶94} The trial court found Husband engaged in financial misconduct when he forged her signature to the documents increasing TAG's credit line with AFC to $450,000, but there was no evidence of financial misconduct when Husband failed to pay AFC when TAG sold cars. Our review of the record supports the trial court's determination that the reasons behind Husband's business decisions were not to intentionally dissipate, destroy, conceal, or fraudulently dispose of Wife's assets. As can be seen by the AFC litigation,

Husband and Wife are equally liable for the debts to AFC. The manifest weight of the evidence supports the trial court's findings.

{¶95} Wife argues that due to Husband's financial misconduct, the AFC obligation should be Husband's separate debt. Based on the trial court's conclusions as to Husband's financial misconduct, we find no error to classify the AFC liability as marital debt. While Husband improperly used Wife's signature to increase the credit limit to $450,000, there was no evidence presented that Husband utilized the increased credit limit. AFC sued TAG, Husband, and Wife for an amount less than the increased limit or the original credit limit agreed to by Wife and Husband. Further, Wife testified she was still involved in the TAG business in 2015. We find the facts in this case support the trial court's finding the debts to AFC were marital debts.

{¶96} As to the 2014 Mercedes, we likewise find the trial court's decision that Husband did not engage in financial misconduct when he sold the vehicle to his parents. While it was used by Wife, the car was a dealer car provided by TAG, which was operated by Husband and Wife.

{¶97} On this record, we find no error by the trial court as to its findings of financial misconduct. Wife's sixth Assignment of Error is overruled.

### VII. ATTORNEY FEES

{¶98} Wife's seventh Assignment of Error argues the trial court abused its discretion when it failed to award Wife attorney fees. R.C. 3105.73(A) reads:

> In an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that action, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court

finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate.

{¶99} It is well-established that an award of attorney fees is within the sound discretion of the trial court. *Zimmerman v. Zimmerman*, 12th Dist. Butler No. CA2014-06-127, 2015-Ohio-1700, 2015 WL 1976430, ¶ 20 citing *Foppe v. Foppe*, 12th Dist. Warren No. CA2010–06–056, 2011–Ohio–49, ¶ 34. An abuse of discretion is more than an error of law; it implies the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶100} The trial court considered Wife's request for award of attorney fees. Wife testified her attorney fees for the divorce action were $39,364.93. Husband's attorney fees were $45,000.

{¶101} In its Findings of Fact and Conclusions of Law, the trial court acknowledged the division of marital property was equitable, not equal. The trial court considered the financial efforts of Wife to maintain the marital property for sale purposes without the assistance of Husband and that she incurred attorney fee expenses to reduce the liability owed to AFC for TAG compared to the limited efforts of Husband. The trial court divided the marital property, marital debt, and separate debt so that Wife was awarded $23,069.69 and Husband was awarded $16,756.03. The trial court found an award of attorney fees pursuant to R.C. 3105.73(A) was not required and we find no abuse of discretion. The trial court stated that in its Findings that it considered the actions

of Wife compared to Husband's inaction in the winding up of the business and marriage. The trial court made an equitable division of marital assets and debts to compensate Wife.

{¶102}     Wife's seventh Assignment of Error is overruled.

## CONCLUSION

{¶103}     The judgment of the Fairfield County Court of Common Pleas, Domestic Relations Division, is affirmed.

By:  Delaney, J.,

Wise, John, P.J. and

Wise, Earle, J., concur.