[Cite as *Jackson v. Jackson*, 2024-Ohio-3134.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| JOHN M. JACKSON | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellant | : | Hon. Andrew J. King, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 23 CAF 10 0095 |
| TRACEY T. JACKSON | : |  |
|  | : |  |
| Defendant-Appellee | : | OPINION |

CHARACTER OF PROCEEDING:   Appeal from the Delaware County Court of
Common Pleas, Case No. 21 DR A 08
0478

JUDGMENT:   Affirmed in part, Reversed in part and
Remanded

DATE OF JUDGMENT ENTRY:   August 16, 2024

APPEARANCES:

For Plaintiff-Appellant

JOHN M. JACKSON PRO SE
263 McCraney Lane
Columbus, OH 43213

For Defendant-Appellee

JACQUELINE KEMP
555 Metro Place North, Ste 300
Dublin, OH 43017

*Gwin, P.J.*

{¶1}    Appellant appeals the September 29, 2023 judgment entry of the Delaware County Court of Common Pleas, Domestic Relations Division.

*Facts & Procedural History*

{¶2}    Appellant John M. Jackson and appellee Tracey T. Jackson were married on October 5, 1996.  The parties have three children.  Two of their children were emancipated at the time of trial.  Appellant filed a complaint for divorce against appellee on August 26, 2021.  The trial court issued a "mutual restraining order" on August 31, 2021.  Appellant filed a motion to determine a de facto termination date of marriage and requested the trial court set a de facto marriage termination date of May 1, 2021. However, appellant later withdrew his motion.

{¶3}    The trial in this case was originally scheduled for July 18, 2022.  On July 12, 2022, appellant filed a motion to continue the trial.  Appellee did not object to the continuance.  Accordingly, the trial court granted appellant's motion and continued the trial until February of 2023.

{¶4}    The magistrate conducted the trial in this case on the following dates: February 13, 15, 16, 17, 21, 22, and 23 of 2023.  Prior to the start of the trial, the parties engaged in discussions about stipulations, but were unable to reach an agreement. However, on the second day of the trial, the parties agreed and stipulated on how to distribute the personal property and how to sell the marital home.

{¶5}    At the beginning of their marriage, both appellant and appellee worked. When the parties had children and moved to Ohio, appellee no longer worked.  Appellant testified he wanted appellee to go back to work, but she refused.  Appellee testified

appellant never asked her to go back to work; rather, the parties agreed that with the amount needed for child care, it was cheaper for her to stay home. Despite any potential disagreement on how the situation occurred, the result was that, until 2017, appellant worked full-time and appellee was not employed outside the home. Each week, appellant would provide appellee with a weekly allowance. Appellant described a situation in which he provided appellee with a yearly budget that she was expected to maintain so she could continue to be a stay-at-home parent. Appellee described a situation in which appellant provided her with multiple spreadsheets each year, and had unrealistic expectations as to how much it cost to raise a family with three children. Thus, she obtained credit cards to provide food and what she thought was necessary to raise her children. At several points throughout the marriage, appellant would stop appellee's allowance if she overspent. Appellant believes appellee should have relied on the money she was supposed to be saving to continue any discretionary spending.

{¶6}    In 2015 or 2016, appellee stated she grew tired of appellant's strict budgeting and what she believed was a constant focus on money that consumed their lives. Thus, she left the home. Appellant offered what he felt was a fair compromise for her to return to the home, i.e., appellee would be responsible for all "discretionary" spending. Both parties agreed they did not discuss any financial information between themselves from 2017 through 2021. The parties continued to have disagreements, and appellee moved out of the marital home in May of 2021. Appellee testified she informed appellant in 2016 that if he ever cut her off again, she would move out, and, when appellant "cut her off" in May of 2021, she moved out.

{¶7}     In August of 2022, appellant purchased a lot of land in Pickerington to enable him to build a house.  The cost of the lot was $159,000.  Appellant testified he liquidated a checking account of $33,000 to purchase the lot.  He also utilized $68,000 from a JP Morgan Chase investment account to purchase the lot.  The JP Morgan Chase account has $1,000 left in it.  Finally, he took out a $50,000 loan from his Nationwide 401(K) to purchase the lot.  Appellant stated he was aware of the restraining order, but felt this was not a violation of the restraining order because he did not dissipate assets.  Appellee did not know about the lot or the 401(K) loan until the beginning of the trial when appellant provided her counsel with his proposed balance sheet.

{¶8}     The parties stipulated to the amounts contained in appellant's retirement accounts:  $790,630 for his 401(K), $325,000 for his pension, $56,180 for his deferred compensation, $12,260 in his supplemental defined benefit plan, and $145,230 in a Merrill Lynch plan.  Appellant did not have the current values of appellee's accounts, but utilized the figures she provided for her retirement accounts.

{¶9}     Appellant testified that in 2016, he split a TD Ameritrade investment account. He transferred $49,000 to his personal checking account and $44,000 into appellee's personal checking account.  Appellee stated this was appellant's gesture of goodwill for reconciliation.  She testified she used the $44,000 for home repairs of the marital home, a new water heater for the marital home, to pay for a sick dog, pay for vacations, and pay to purchase items for their children.

{¶10}   Appellant testified he established a 529 account for each of his daughters. Appellant stated appellee went into the accounts and changed the phone number and contact information on the accounts.  Appellant wants the accounts to be marital and be

assigned to appellee because she made withdrawals from the accounts without his knowledge. Appellant believes appellee had no authorization to take the money out of the accounts, even if it was for the children's schooling. Appellant stated he set up the funds for the benefit of the children. As to funds taken out of Sydney's account, appellant and appellee had a conversation about the actual dollar amount that needed to be taken out of the account to pay for school. He knew for Sydney's first two years of college the money had to be coming from the 529 plan. After that, he assumed appellee would pay the college expenses from her own income, not the 529 fund, because appellant wanted to save the 529 funds for medical school.

{¶11} Appellant testified the 529 funds were used legitimately since 2018 for Sydney. However, he still considers this financial misconduct because appellee did not obtain his permission to expend these funds to pay for Sydney's school. As for Shelby and Symone, appellant has no outside evidence to show or suggest they weren't used for anything other than school, but he does not know what the funds were used for. He did not approve any of the transfers from Shelby or Symone's 529 plans.

{¶12} Appellee testified that Sydney attended Vanderbilt University. Though Sydney got a full tuition scholarship, appellant and appellee were responsible for paying room and board, which was $8,900 per semester. Appellee used the 529 plan to pay this room and board. Appellee testified appellant knew about the transactions for Sydney because he had to complete the 1099's to submit for their taxes. Appellee denied that she and appellant ever discussed saving the 529 for medical school. Shelby went to Columbus State, and appellee testified she used the money from Shelby's 529 plan to pay for Columbus State. Initially, appellant was not aware the funds were being used for

Columbus State.  However, he never complained about the use of the funds from the 529 plan for Columbus State.  In August of 2021, Shelby started at Kentucky State University, and she is still going there.  Appellee would like to use the 529 funds to help pay for the tuition, which is $18,000 per year.  Symone goes to a private high school, and appellee used funds from the 529 plan to help pay for the tuition.  Appellee testified to Exhibit P, which is documentation of where the funds went from the 529 accounts to pay for each school expense.

{¶13}  Appellee testified she did not know she needed permission from appellant to spend the 529 funds.  Appellee stated appellant never complained about her using the funds, and the statements came to the home via the mail each month for him to view.  He never told appellee he had any issues with the use of the funds contained in the statements.  Appellee stated it was appellant who told her she could use the 529 funds to pay for books and other school-related expenses because she thought she could only use it for tuition.  Appellee testified she had always taken care of paying fees and all school shopping for the children throughout their marriage, so she believed she was permitted to use the 529 funds for their education expenses.  Appellee stated she always used the 529 funds for the benefit of her daughters, as the accounts were established for their benefit.

{¶14}  Appellee testified that appellant gave her the password for the 529 accounts.  Appellant admitted he gave appellee the password for the 529 accounts in 2008.  He stated she was only supposed to use the passwords in the event of his death, not to change any of the information associated with the account.

{¶15} Appellant spent a lengthy amount of time detailing what he believes to be financial misconduct that appellee committed for "excessive spending" from 2016 until the date of separation. Initially in their marriage, from 1996 to 2015, appellant managed the finances how he wanted to. The parties separated for a period of time in 2015 or 2016. In order to provide appellee with some security she said she desired, appellant transferred $44,000 from the TD Ameritrade account into appellee's personal checking account. Also, in 2016, when appellee returned to the home, appellant stated he let her be in charge of the discretionary household spending; however, he set up a separate account that appellee did not have access to in order to pay household bills. Appellant let appellee make payments for items such as food, vacations, phone, internet, cable, eating out, social events, and "lifestyle items." Appellant testified he got bonuses of over $100,000 each year. He did not include any of his bonus money in the amount he gave appellee for discretionary spending; rather, he kept the funds for himself.

{¶16} Appellee disputed appellant's testimony that she was in charge of all of the discretionary spending. She agreed that he gave her a certain amount of money and she had to pay for food, vacations, home repairs, household expenses, and expenses for the children (cheer squad, gymnastics, Girl Scouts, soccer); however, she stated he kept a large amount of money for himself to do with what he wanted. She never knew who he was loaning money to or what he was investing in. If appellee questioned him, appellant would tell her it was his money and his house. Further, appellee stated appellant would continually add items to what she needed to pay (i.e., life insurance premiums) and did not increase the amount he gave her. Appellant agreed he spent his funds on items for his family, such as paying for his brother to take college classes, purchasing plane tickets

for his family, remodeling his mother's home for $12,000, paying $5,000 for his aunt's home, and purchasing two cars for his mother. In 2017, he paid $25,000 to create an endowment at Ohio State University. He did not tell appellee about this because they were not "discussing financial matters during the last five years of [their] marriage."

{¶17} Appellant presented the court with Exhibit 9, which contained his opinion as to what amount would be reasonable to spend for each discretionary category. He testified that from January 1, 2017 to the end of May 2021, he deposited over $494,497.23 into appellee's "discretionary" account. Appellant went through each charge appellee made, and detailed how he believed each of these charges was excessive. Appellant believes $214,035 was a normal and responsible budget for that period of time, so he believes appellee excessively spent $233,559.19. Appellant also expected that, during that period, appellee would have been saving and investing at least some money in the 529 plans and the TD Ameritrade account.

{¶18} Appellee testified the charges she made during this time were not excessive, and the amounts appellant felt were "reasonable" for each discretionary category were not reasonable. Appellee stated appellant would consider it extravagant if she spent $10 more on something than she should have. Appellee testified everything she was buying was for the children and the marital home and included items such as: pots, pans, decorations, furniture, towels, comforters, book fairs, school supplies, lessons, uniforms, vacations, restaurants, entertainment, and home repairs.

{¶19} Appellee testified she established a "Greenlight Account" with Huntington Bank. The account has appellee's name on it, along with her daughters' Sydney and Shelby's names on it. Appellee stated that, during the marriage from 2016 to 2021, she

used the funds in this account to provide funds to the kids for an allowance, concerts, food, eating out, and activities. Sydney and Shelby each worked during this time at Giant Eagle and Cane's, and those funds went into the Huntington account with all three names on it ("Greenlight Account"). Sydney now has a full-time teaching job. She still puts her paycheck into the Greenlight Account. Appellee keeps notes of how much each child deposits into the account each month. On cross-examination, appellant agreed appellee funded the Greenlight Account for the children. He agrees the money was all sent to the girls; however, he believes it is financial misconduct because he did not approve the use of the funds.

{¶20} The magistrate issued a detailed magistrate's decision on August 29, 2023. The magistrate found the duration of the marriage to be from October 5, 1996 to February 13, 2023. The magistrate utilized the required factors to determine an appropriate property division that is fair and equitable. In part, the magistrate found as follows: it is fair and equitable for the value of the lot appellant purchased in August of 2022 to be utilized in the property division analysis and for the value of the lot to be retained by appellant; appellant should be responsible for the loan he took out of his 401(K) to purchase the lot; it is fair and equitable for the full value of Chase bank accounts to be utilized, and for the value of the accounts to be retained by appellant and assigned to him as an asset; the $67,000 withdrawn from the Chase Brokerage account to purchase the lot is present in the equity value of the lot; and appellant's retirements plans should be divided as of February 13, 2023. The magistrate divided all of the accounts and assets, and completed the Court's Exhibit 1, which is entitled "Property Division Spreadsheet." After going through the factors and detailing each marital and separate asset for each

spouse, the magistrate ordered appellant to pay a one-time property equalization payment of $29,343.65.

{¶21} The magistrate found appellant committed financial misconduct when he utilized $50,000 from joint assets to pay for the lot because the 401(K) he borrowed the money from was clearly intended to be a retirement asset of the parties. Further, that appellant personally gained and profited from the financial activities utilizing the 401(K) loan, and appellee's interest was, in part, defeated as the balance remaining to be divided was reduced by the loan.

{¶22} The magistrate determined appellant did not include his bonus income in his budget or identify where the funds were deposited or what remains of them. Further, that appellant used these funds for his personal discretionary spending as he saw fit, and he retained $186,662.94 in bonus income during the proceedings. However, the magistrate found no financial misconduct as to the bonuses.

{¶23} As to the 529 accounts, the magistrate noted appellant testified the 529 for Sydney was used for legitimate educational expenses. Further, both parties testified the intent of establishing the 529 accounts was to provide for the children's educational expenses. Neither party testified that they ever believed the 529 accounts were investments for the parties benefit or later withdrawal. The magistrate concluded appellant failed to establish appellee engaged in financial misconduct as it relates to 529 savings because: neither party believed those assets to be their individual entitlements or investments; the testimony was clear that both parties intended for the 529 plans to be for the benefit of the children and specifically for the payment of education related expenses for the children; and there was no profit to appellee or defeat of appellant's

marital interest because both parties testified the accounts were for the children's educations which both parties acknowledge are ongoing. The magistrate designated appellee as the custodian of the 529 accounts and ordered they be maintained and utilized only for the benefit of the children. The magistrate concluded it was not fair and equitable to include the 529 plans as marital assets because the accounts are being held and maintained for the benefit of the children and their education expenses.

{¶24} With regards to appellant's request to find appellee committed financial misconduct for spending $44,000 from a TD Ameritrade account he gave her in 2016, the magistrate noted appellee's testimony that she spent the money on a water heater for the marital home, repairs to the marital home, swimming lessons for appellant's mother, the family pet, cabin trips, and expenses for the family. The magistrate found no financial misconduct because the transfer occurred years before the parties' separation and because, by appellant's own admission, there were "no strings attached" to this money he gave her. The magistrate stated she "will not second guess joint marital decisions that occurred 5 years prior to their separation."

{¶25} The magistrate next addressed appellant's request for a finding of financial misconduct against appellee for allegedly excessive spending from 2016 through 2020. The magistrate made the following findings: appellant was never denied access to the parties' accounts; appellant never requested information about the parties' accounts; appellant believed when appellee took over the discretionary spending she had an understanding of his expectations with regard to investing; appellant was uninvolved with discretionary spending after 2016; appellant made no effort to inform himself of the state of the parties' financial affairs; appellee testified appellant kept a tight hold of the finances

of the parties; when appellant's budgeted amount was not sufficient to meet expenses, appellee had no choice but to rely on credit cards to pay for things above and beyond the budgeted amounts; appellee did not believe she was in charge of all of the discretionary spending after 2016 because appellant gave himself a certain amount each month; while appellee had a limited amount of income to pay for family expenses, appellant was paying for other family member's vehicles; appellee never knew how appellant was spending his money; appellee testified that with the Greenlight Account she essentially provided the kids with the ability to purchase food and pay for things they needed that appellee funded with a Huntington checking account; appellant believes this is misconduct because he never gave his children an allowance; appellant agreed it appeared the amounts were largely used for the children; and appellant put appellee in charge of the finances and chose to be hands-off despite her history of running up credit card balances.

{¶26} The magistrate stated, "hours of testimony were spent pouring over financial analyses conducted by John detailing what he believed to be the financial misconduct of Tracey." Further, that the parties, throughout their marriage, disagreed on how they would handle financial affairs. The magistrate concluded that disagreeing on how to handle financial affairs is insufficient to meet the burden for financial misconduct.

{¶27} Appellant filed objections to the magistrate's decision on September 13, 2023. He also requested a thirty-day extension to file the transcript and supplement his objections. Appellee filed cross-objections to the magistrate's decision, and a motion to dismiss appellant's objections as being untimely.

{¶28} The trial court issued a judgment entry on September 29, 2023. The court found appellant's objections untimely, and also found appellee's cross-objections

untimely.    Further, the court adopted the magistrate's order, and incorporated by reference the findings of fact and conclusions of law contained in the magistrate's decision.

{¶29}  Appellant appeals the September 29, 2023 judgment entry of the Delaware County Court of Common Pleas, Domestic Relations Division, and assigns the following as error:

{¶30}  "I.   THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FAILING TO CONSIDER APPELLANT'S OBJECTIONS TO THE MAGISTRATE'S DECISION THAT WERE FILED ONE DAY LATE.

{¶31}  "II. THE TRIAL COURT COMMITTED PLAIN ERROR BY FAILING TO ADHERE TO THE PARTIES' STIPULATIONS REGARDING THE DATE AND VALUE OF THE MARITAL ASSETS.

{¶32}  "III. THE TRIAL COURT COMMITTED PLAIN ERROR BY UTILIZING MULTIPLE VALUATION DATES WHEN DETERMINING THE DIVISION OF ASSETS AND THE PROPERTY DIVISION EQUALIZATION PAYMENT

{¶33}  "IV. THE TRIAL COURT COMMITTED PLAIN ERROR BY ALLOCATING TO APPELLANT THE VALUE OF ACCOUNTS USED TO PURCHASE A LOT AND THEN ALSO ALLOCATING THE LOT TO APPELLANT RESULTING IN DOUBLE COUNTING OF THE SAME ASSETS.

{¶34}  "V. THE TRIAL COURT COMMITTED PLAIN ERROR BY (A) FAILING TO CHARACTERIZE THE 529 COLLEGE SAVINGS ACCOUNTS AS MARITAL ASSETS AND (B) FAILING TO INCORPORATE THEM INTO THE CALCULATION OF THE PROPERTY DIVISION EQUALIZATION PAYMENT.

{¶35} "VI. THE TRIAL COURT COMMITTED PLAIN ERROR BY CHARACTERIZING A 401K LOAN OBTAINED BY APPELLANT AS A "SEPARATE LIABILITY" BECAUSE (A) SUCH LOAN WAS USED TO FUND THE ACQUISITION OF THE LOT AND (B) THE LOT HAS BEEN TREATED AS A MARITAL ASSET.

{¶36} "VII. THE TRIAL COURT COMMITTED PLAIN ERROR BY FAILING TO CONCLUDE THAT APPELLEE ENGAGED IN FINANCIAL MISCONDUCT WHEN SHE UNILATERALLY WITHDREW $113,087.75 FROM THE 529 COLLEGE SAVINGS ACCOUNTS WITHOUT APPELLANT'S KNOWLEDGE OR CONSENT.

{¶37} "VIII. THE TRIAL COURT COMMITTED PLAIN ERROR BY AWARDING THE ENTIRE HEALTH SAVINGS ACCOUNT TO APPELLANT AND FAILING TO RESTRAIN APPELLEE FROM UTILIZING SUCH ACCOUNT TO PAY HEALTH-RELATED EXPENSES AFTER JULY 18, 2022.

{¶38} "IX. THE TRIAL COURT COMMITTED PLAIN ERROR BY CONCLUDING THAT APPELLEE DID NOT ENGAGE IN FINANCIAL MISCONDUCT FOR EITHER (A) FAILURE TO DISCLOSE $44,000 PREVIOUSLY DISTRIBUTED TO APPELLEE FROM THE PARTIES' JOINT TD AMERITRADE INVESTMENT ACCOUNT OR (B) SPENDING THE ENTIRE $44,000 DURING A 60-DAY PERIOD IN 2016 WITHOUT APPELLANT'S KNOWLEDGE.

{¶39} "X. THE TRIAL COURT COMMITTED PLAIN ERROR BY FAILING TO CONCLUDE THAT APPELLEE'S TRANSFER OF $35,300 FROM RESTRICTED SAVINGS ACCOUNT TO CHECKING ACCOUNTS (AND ULTIMATELY SPENDING OF IT) IN VIOLATION OF THE MUTUAL RESTRAINING ORDER CONSTITUTED FINANCIAL MISCONDUCT.

**{¶40}** "XI. THE TRIAL COURT COMMITTED PLAIN ERROR BY FAILING TO CONCLUDE THAT APPELLEE'S EXCESSIVE AND SECRETIVE SPENDING OF $233,559.19 IN 4 ½ YEARS CONSTITUTED FINANCIAL MISCONDUCT.

I.

**{¶41}** In his first assignment of error, appellant argues the trial court abused its discretion by failing to consider appellant's objections to the magistrate's decision that were filed one day late. Appellant concedes his objections were filed one day late, but contends the trial court "could have used its discretion" and considered the objections.

**{¶42}** Civil Rule 53(D)(3)(b)(i) provides that "a party may file written objections to a magistrate's decision within fourteen days of the filing of the decision, whether or not the court has adopted the decision during that fourteen-day period as permitted by Civ.R. 53(D)(4)(e)(i)."

**{¶43}** In this case, the magistrate's decision contains a time-stamp of August 29, 2023. Appellant did not file his objections until September 13, 2023, which is one day past the fourteen-day deadline contained in Civil Rule 53(D)(3)(b)(i). Appellant did not file a motion for extension pursuant to Civil Rule 53(D)(3)(b)(5), and made no attempt to demonstrate "good cause" as to why the objections were filed late. We find no abuse of discretion in the trial court's failing to consider appellant's objections as they were not in compliance with Civil Rule 53(D)(3). *Village of Lakemore v. Schell*, 2019-Ohio-5097 (9th Dist) (no abuse of discretion for trial court not to consider objections that were filed one day late); *Lineback v. Lineback*, 2017-Ohio-5673 (12th Dist.) (objections filed one day late are out of compliance with the rule); *Hull v. Hull*, 2012-Ohio-970 (5th Dist.) (written

objections are necessary to preserve issues for appeal).  Appellant's first assignment of error is overruled.

*Plain Error Review*

**{¶44}**  Because we overruled appellant's first assignment of error, we review the remainder of his assignments of error pursuant to the plain error doctrine.  "Plain error" is often construed to encompass errors of law or other defects evident on the face of the magistrate's decision which prohibit the adoption of a magistrate's decision even in the absence of objections.  *A.A. v. F.A.*, 2019-Ohio-1706 (5th Dist.).

**{¶45}**  The plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where the error seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.  *Kell v. Russo*, 2012-Ohio-1286 (5th Dist.), citing *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997).  Even if we were to discover plain error, we have "discretion to disregard the error and should correct it only to prevent a manifest miscarriage of justice."  *Id.*

II. & III.

**{¶46}**  In his second assignment of error, appellant contends the trial court committed error in ignoring the stipulations the parties made as to the division of the retirement accounts.  In his third assignment of error, appellant argues the trial court committed plain error by utilizing multiple valuation dates when determining the division of assets and the property equalization payment.

**{¶47}**  At issue in these assignments of error are appellant's retirement accounts from Nationwide and Merrill Lynch (collectively, "Appellant's Retirement Accounts").

Specifically, these accounts are as follows: Nationwide 401(K), Nationwide Pension, Nationwide Deferred Compensation, Nationwide Supplemental Defined Contribution Plan, and appellant's Merrill Lynch IRA. Appellant contends the trial court committed plain error in (1) failing to recognize stipulations as to these accounts and (2) in utilizing multiple valuation dates for these accounts and other financial accounts.

{¶48} It is clear from the record that appellee did stipulate to the values of Appellant's Retirement Accounts, as follows: $790,630 for the Nationwide 401(K), $325,000 for the Nationwide Pension, $12,260 for the Nationwide Supplemental Defined Contribution Plan, $56,180 for the Nationwide Deferred Compensation, and $145,230 for the Merrill Lynch IRA.

{¶49} The magistrate and trial court utilized the stipulated values in the property division worksheet (Court's Exhibit 1), and calculated the property division equalization payment owed by appellant to appellee based upon the stipulated values. However, in the magistrate's decision that was adopted by the trial court, the magistrate incorrectly found the parties did not stipulate to these values. The entry states the following: "the parties did not stipulate to the value of the (Nationwide) pension," "the parties did not stipulate to the value of either the Nationwide Deferred Compensation Plan or the Nationwide Supplemental Defined Contribution Plan," and "the parties did not stipulate to the value of John's Merrill Lynch IRA." Additionally, the trial court utilized a June 30, 2022 date to divide all of appellee's retirement accounts while utilizing the February 13, 2023 date to divide Appellant's Retirement Accounts.

{¶50} Appellee argues the parties never stipulated to one specific valuation date and did not stipulate or agree to the duration of the marriage. We agree with appellee

that the parties never stipulated to a specific valuation date and clearly did not stipulate to or agree to the duration of the marriage. Accordingly, we find no error in the magistrate and trial court's determination of the duration of the marriage pursuant to R.C. 3105.171(A)(2). However, the magistrate's judgment entry, which was adopted by the trial court, incorrectly states that the values of appellant's retirement accounts were not stipulated to. Further, the trial court's Exhibit 1 (property division worksheet) conflicts with the judgment entry, as they each provide a different date for the valuation of Appellant's Retirement Accounts.

{¶51} Appellee also contends the trial court is permitted to utilize multiple valuation dates as long the trial court sufficiently explains its reasoning. A trial court has the discretion to determine the date of valuation in its discretion, and this date may vary from asset to asset. *Batten v. Batten*, 2010-Ohio-1912 (5th Dist.) (trial court clearly set forth explanation for utilizing different valuations dates, so no abuse of discretion); *Karabogias v. Zoltanski*, 2023-Ohio-227 (8th Dist.); *Bobie v. Bobie*, 2023-Ohio-3293 (12th Dist.) (it is within the court's discretion to use different valuation dates where valuation or account balances at a certain date were the only evidence before the court). However, the trial court must adequately explain its reasons for choosing different valuation dates for certain assets. *Id.* The record reflects that the magistrate and trial court adequately and specifically explained its reasons for utilizing the differing valuation dates for the accounts other than Appellant's Retirement Accounts to achieve equity. The trial court valued these accounts based upon the only valuation or account balances presented to the court.

{¶52} While the judgment entry issued by the magistrate and adopted by the trial court clearly explains why it utilized the sometimes-varying valuation dates for the

accounts other than Appellant's Retirement Accounts, neither the magistrate nor the trial court explained why the values stipulated to by the parties was utilized on Exhibit 1, but was not included in the judgment entry. These errors or defects are evident from the face of the magistrate's decision subsequently adopted by the trial court.

{¶53} Appellant's second and third assignments of error are overruled in part and affirmed in part. Upon remand, the trial court shall only address the narrow issues of (1) determining whether the fact that the parties stipulated to the value of Appellant's Retirement Accounts impacts the division of Appellant's Retirement Accounts (Nationwide 401(K), Nationwide Pension, Nationwide Deferred Compensation, Nationwide Supplemental Defined Contribution Plan, Appellant's Merrill Lynch IRA) and (2) if necessary, after determining whether the stipulations impact the division date of Appellant's Retirements Accounts, to provide clarification as to why the date of division of the retirement accounts differs in Exhibit 1 and the judgment entry.

IV.

{¶54} In his fourth assignment of error, appellant argues the trial court committed plain error in "double counting" two Chase checking accounts in the amounts of $61,597.72 and $11,104.34 because these accounts were depleted to purchase the lot in Pataskala and thus the trial court could not allocate these two checking accounts to appellant on the balance sheet because the lot was listed on the balance sheet.

{¶55} The trial court must equitably divide marital property between spouses in accordance with R.C. 3105.171. The trial court has broad discretion to determine an equitable and fair division of the marital assets. *Hull v. Hull*, 2012-Ohio-970 (5th Dist.).

Thus, the valuation of marital assets is typically a factual issue that is left to the discretion of the trial court. *Tincher v. Tincher*, 2020-Ohio-3352 (5th Dist.).

{¶56} At trial, appellant testified he utilized the following to pay for the lot: (1) $50,000 loan from his 401(K), (2) $67,000 from a Chase brokerage/investment account, and (3) $33,000 from a Chase checking account that he liquidated upon purchase of the lot. The Chase brokerage/investment account had a balance of $1,000, and this $1,000 was allocated to appellant on the balance sheet, not the entire $68,000. The magistrate specifically found that, even though appellant provided no statements for this account, the $67,000 withdrawn is "present in the equity of the Pataskala, Ohio lot." Accordingly, there was no double-counting of the investment account.

{¶57} It is unclear where appellant is claiming the $33,000 came from, either the $11,104.34 checking account, the checking $61,597.72 account, or both. Anything over the $33,000 would not be double-counting because appellant's testimony is that only $33,000 came from a Chase checking account. In her findings of fact, the magistrate found appellant completely liquidated the $33,000 Chase checking account to buy the lot. This was in accordance with appellant's testimony that he liquidated the account to purchase the lot. Thus, no $33,000 checking account was included on the court's balance sheet (Exhibit 1). In the "financial accounts" section of her decision, the magistrate allocated two checking accounts in appellant's name to him, utilizing the amounts contained in appellant's Exhibit 25 ($61,597.72 and $11,104.34), and found it fair and equitable to assign these to appellant.

{¶58} The magistrate did not assign or "double count" the $33,000 because she found it was depleted to purchase the lot and did not list it on the balance sheet. However,

the magistrate did separately assign to appellant two checking accounts with balances contained in appellant's Exhibit 25. Reading these two provisions of the magistrate's order together, the magistrate found the checking accounts listed on Exhibit 25 were separate from the account used to fund the lot.  As to the determination of the funding source for the $33,000, the determination of whether a witness or evidence is credible rests solely with the finder of fact, and we may not substitute our judgment.  *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273.  If there are inconsistencies in the testimony or evidence offered at trial, the trier of fact is free to believe or disbelieve any or all of the evidence presented.  *Bevard v. Bevard*, 2010-Ohio-4210 (5th Dist.).

{¶59} Appellant also appears to be arguing the trial court's determination as to these checking accounts was against the manifest weight of the evidence.  However, this Court cannot conduct a manifest-weight-of-the-evidence review because appellant failed to file timely objections to the magistrate's decision.  Additionally, the magistrate and trial court based its determination on the testimony and evidence presented by the parties.  "A domestic relations court is in the best position to resolve disputes of fact, and assess the credibility of the witnesses and the weight to be given to their testimony."  *Bates v. Bates*, 2005-Ohio-3374 (10th Dist.).

{¶60}  The magistrate additionally found appellant committed financial misconduct with the purchase of the lot in violation of the temporary restraining order.  R.C. 3105.171(E)(4) provides that "the court may compensate the offended spouse with a distributive award or with a greater award of marital property."  Accordingly, to the extent the magistrate and trial court compensated appellee with these funds, we cannot conclude the magistrate's decision, or the trial court's adoption thereof, amounted to plain

error that seriously affected the basic fairness, integrity, or public reputation of the judicial process.

**{¶61}** Appellant's fourth assignment of error is overruled.

V.

**{¶62}** In his fifth assignment of error, appellant argues the trial court committed plain error by failing to characterize the 529 college savings accounts as marital assets and by failing to incorporate them into the property division equalization payment.

**{¶63}** In the judgment entry by the magistrate later adopted and approved by the trial court, the magistrate found the 529 college fund was not a marital asset for purposes of determining the property division because the testimony demonstrated the accounts are being held and maintained for the benefit of the children and payment of their education-related expenses. The magistrate detailed the testimony of the parties in this regard, specifically the testimony that both parties agreed the accounts were established for their children's education, neither party believed these assets to be their individual assets, and both parties' clear testimony that they intended the 529 plans to be for the benefit of their children.

**{¶64}** Appellant asserts that since 529 college savings plans do not fall within the definition of "separate property" under R.C. 3105.171, they legally are martial property, and can never be found to be separate property. However, there is no clear-cut rule that 529 plans must always be classified as marital assets. *Ramsey v. Ramsey*, 2014-Ohio-1921 (10th Dist.) (529 plans was not part of the property division because the parties specifically contemplated the funds for education expenses for the children rather than a personal financial account for either spouse); *Ramsey v. Ramsey*, 2012-Ohio-1715 (9th

Dist.) (529 plan was the property of the children, and not marital property, where the parties agreed to utilize the funds for the children's education, thus suggesting that the parties were not free to do with the funds as they liked); *Roush v. Roush*, 2017-Ohio-840 (10th Dist.) (no error in finding savings accounts were not marital, but were assets of the parties' children, trial court's determination supported by competent and credible evidence). That determination is based upon the testimony and evidence presented in each case, and an appellate court reviews the decision as to whether a 529 plan or other account for the benefit of the child is marital to determine whether it is against the manifest weight of the evidence. *Roush v. Roush*, 2017-Ohio-840 (10th Dist.).

{¶65} Of particular relevance, this Court has found that a trial court's finding was not in error when it determined certain funds belonged to the parties' teenage children when the parties intended to use the funds to pay for education. *Kinney v. Kinney*, 2005-Ohio-5712 (5th Dist.).

{¶66} This Court cannot conduct a manifest-weight-of-the-evidence review because appellant failed to file timely objections to the magistrate's decision. Additionally, the magistrate and trial court based their determination on the testimony and evidence presented by the parties. "A domestic relations court is in the best position to resolve disputes of fact, and assess the credibility of the witnesses and the weight to be given to their testimony." *Bates v. Bates*, 2005-Ohio-3374 (10th Dist.).

{¶67} We find the magistrate and trial court's treatment of the 529 plans does not contain any error that would seriously affect the basic fairness, integrity, or public reputation of the judicial process, or challenge the legitimacy of the underlying judicial process itself. Appellant's fifth assignment of error is overruled.

VI.

{¶68} In his sixth assignment of error, appellant contends the trial court committed plain error by characterizing the $50,000 401(K) loan obtain by appellant to fund his purchase of the Pataskala lot to be his separate liability because the lot is treated as a marital asset. Appellant contends since the lot is marital property, the loan used to obtain the lot should also be martial property.

{¶69} Characterization of property as marital or separate debt must be supported by competent and credible evidence. *Tincher v. Tincher*, 2020-Ohio-3352 (5th Dist.). Trial courts have broad discretion in determining what is separate property and what is marital property. *Id.*

{¶70} The magistrate and trial court found the $50,000 401(K) loan that appellant obtained in August of 2022 was separate debt. This finding was consistent with appellant's testimony. Appellant testified he believed he should be responsible for the indebtedness. This finding is also consistent with appellant's proposed findings of fact in which he states, "plaintiff requests the Court to declare each party to be solely responsible for the indebtedness that they incurred in their individual name, and, as a result, award the $50,000 401(K) loan to Plaintiff." Likewise, appellant did not include the $50,000 loan on his proposed balance sheet as marital property. Accordingly, we find no plain error in the treatment of the loan as appellant's separate debt.

{¶71} Appellant asserts in his appellate brief that "the trial court failed to find that the 401(K) loan to purchase the lot constitue[d] financial misconduct," and thus it is improper for the loan to be characterized as separate property. Appellant also asserts it was error to classify the loan as separate property because appellee did not suffer any

financial harm from his actions. However, the magistrate, and the trial court by adopting the magistrate's decision, clearly found appellant engaged in financial misconduct by obtaining the loan in August of 2022 in violation of the temporary restraining order.

{¶72} The magistrate specifically found as follows: the funds in the 401(K) were intended to be retirement assets of the parties; appellant personally gained and profited from his financial activities utilizing the 401(K) loan; appellee's interest was, in part, defeated; and marital funds were dissipated to the advantage of appellant and the disadvantage of appellee.

{¶73} A determination on financial misconduct rests on the fact and circumstances of each case. *Tincher v. Tincher*, 2020-Ohio-3352 (5th Dist.). As such, the trier of fact is given the duty to determine the credibility of each party's assertions in determining financial misconduct. *Id.* The trial court is provided discretion in determining whether a spouse committed financial conduct pursuant to R.C. 3105.171(E)(3), generally subject to whether the determination is against the manifest weight of the evidence. *Id.* Financial misconduct implies some type of wrongdoing such as interference with the other spouses' property rights. Typically, the offending spouse * * * either profits from the misconduct or intentionally defeats the other spouses' distribution of marital assets." *Kilpatrick v. Kilpatrick*, 2011-Ohio-443 (5th Dist.). To determine financial misconduct, a court must look to the reasons behind the questioned activity or the results of that activity and determine whether the wrongdoer profited from the activity or intentionally dissipated, destroyed, concealed, or fraudulently disposed of the other spouse's assets. *Tincher v. Tincher.*, 2020-Ohio-3352 (5th Dist.).

{¶74} Appellant contends the magistrate and trial court committed error in their determination that he personally gained and profited and that appellee's interest was, in part, defeated, by the purchase of the lot in August of 2022 without appellee's knowledge. While the general standard of review is whether the trial court's finding of financial misconduct is against the manifest weight of the evidence, that standard is not applicable in this case because appellant did not timely filed objections to the magistrate's decision. Essentially, appellant is asking this Court to conduct a manifest weight of the evidence review to determine whether the decision of the magistrate and trial court was unsupported due to the testimony and evidence he presented at trial. We cannot conduct a manifest-weight-of-the-evidence review since no timely objections were filed to the magistrate's decision.

{¶75} We cannot conclude that the magistrate's decision, or the trial court's adoption thereof, amounted to plain error that "seriously affect[ed] the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Brandon,* 2009–Ohio–3818, at ¶ 37, quoting *Davidson,* 79 Ohio St.3d 116, syllabus. Appellant's sixth assignment of error is overruled.

VII.

{¶76} In his seventh assignment of error, appellant contends the trial court committed plain error by failing to conclude appellee engaged in financial misconduct when she unilaterally withdrew $113,087.75 from the 529 college savings accounts without appellant's knowledge or consent.

{¶77} The magistrate issued the following findings of fact: appellee testified she changed the e-mail on the account because she initiated the transfers to the schools;

appellee testified she never changed the password on the account and appellant always had access to the account; appellant testified he believed the 529 funds for Sydney were used for legitimate educational expenses, although he could not remember if he made any of those transactions; appellant testified he and appellee had a discussion about needing to send money to the school, but he does not remember what happened after that; appellant testified he did not look at the accounts because he did not need to; appellant believes after appellee started working full-time, appellee should have used her income to pay the tuition, room, and board for their children; appellant changed the password to the 529 fund for Symone during the divorce so appellee could not access the funds; appellant testified he was not making a statement one way or the other as to whether the 529 funds were used for legitimate purposes; appellant believes it is financial misconduct because he did not approve the transfers; appellee testified appellant never questioned her on the 529 expenses and it was appellant who informed appellee she could use the 529 accounts to purchase books; and appellee testified she utilized funds from the 529 accounts to pay for legitimate educational expenses. The magistrate concluded: it was clear both parties intended for the 529 plans to be for the benefit of the children; and appellee did not defeat appellant's marital interest in the accounts because both parties testified the accounts were for the children's education needs that are ongoing and appellee used the funds for educational expenses.

{¶78} While appellant argues appellee committed "electronic forgery" by utilizing the password for the 529 account in order to change the e-mail on the account, appellee's undisputed testimony is that appellant gave her the password to the account in 2016.

Accordingly, we find no plain error in the trial court's determination that this did not constitute financial misconduct.

**{¶79}** Appellant cites this Court's decision in *Musleve v. Musleve* for the proposition that a spouse automatically commits financial misconduct by withdrawing funds from a 529 plan without the knowledge or consent of the other spouse, and that oral testimony by the spouse withdrawing the funds is never sufficient to trace the funds. *Musleve v. Musleve*, 2008-Ohio-3961 (5th Dist.).

**{¶80}** We disagree with appellant's characterization of the *Musleve* case. In *Musleve*, we found the trial court's determination that one spouse had not sufficiently traced 529 funds from the college savings account to expenditures made on behalf of the child's college education was not against the manifest weight of the evidence and a finding of financial misconduct by the trial court was not an abuse of discretion. *Id.* We specifically noted in *Musleve* the broad discretion the trial court has in a finding of financial misconduct. *Id.* Additionally, we did not issue a bright-line rule that a spouse automatically commits financial misconduct by withdrawing funds from a 529 plan without the consent of the other spouse, or that the oral testimony by the spouse withdrawing the funds is never sufficient to trace the funds. Rather, we re-iterated that "it was within the trial court's province" to find the appellant had not sufficiently traced the funds. *Id.* In this case, it was similarly within the trial court's province to determine, based upon the testimony and evidence offered by appellee, that appellee sufficiently traced the funds. We find no plain error in the trial court's determination.

**{¶81}** Appellant essentially requests this Court conduct a manifest-weight-of-the-evidence review of the trial court's determination as to the sufficiency of appellee's

evidence tracing the funds.   We decline to do so since appellant did not file timely objections to the magistrate's decision.   We cannot conclude the magistrate's decision, or the trial court's adoption thereof, in this regard amounted to plain error that "seriously affect[ed] the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Brandon,* 2009–Ohio–3818, at ¶ 37, quoting *Davidson,* 79 Ohio St.3d 116, syllabus.   Appellant's seventh assignment of error is overruled.

VIII.

**{¶82}**   In his eighth assignment of error, appellant contends the trial court committed plain error when it awarded the entire health savings account to appellant and failed to restrain appellee from using funds in this account after July 18, 2022.

**{¶83}**   Appellant's argument is essentially that the trial court should have valued the account as of September 30, 2023, instead of July 18, 2022.   Appellant attaches to his appellate brief Exhibit D, which is purportedly a print-out of the account balance as of September 30, 2023, and with a "statement print date" of January 31, 2024.   This exhibit contains information from dates subsequent to the trial, subsequent to the magistrate's decision, and subsequent to the trial court's judgment entry; further, it was "printed out" after this appeal was already filed.   Appellant's reliance on a new exhibit attached to his appellate brief in support of his appeal is misplaced.   "A reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." *State ex rel. Montgomery Cty. Pub. Defender v. Siroki*, 2006-Ohio-662; *State ex rel. Harris v. Turner,* 2020-Ohio-2901.   This

is particularly true in this case because appellant failed to timely object to the magistrate's decision, and we review the trial court's decision for plain error.

{¶84} The magistrate specifically stated why she utilized the July 18, 2022 date to value the Health Savings Account, i.e., because appellant testified the HSA had a value of $7,546.78 and that was the only value presented at trial by either of the parties. We find no plain error in the magistrate's determination.

{¶85} As to appellant's argument regarding a restraining order, appellant did not request such an order be issued, or ask that the trial court wait to value the HSA until some later date. A litigant who has the opportunity to raise an issue in the trial court, but declines to do so, waives the right to raise that issue on appeal. *Fields v. Zanesville Police Depart.*, 2021-Ohio-3896 (5th Dist.).

{¶86} Appellant's eighth assignment of error is overruled.

IX.

{¶87} In his ninth assignment of error, appellant argues the trial court committed plain error in concluding that appellee did not engage in financial misconduct for either (1) the failure to disclose the $44,000 previously distributed to appellee from the parties' joint TD Ameritrade Investment Account or (2) spending the entire $44,000 during a 60-day period in 2016 without appellant's knowledge.

{¶88} Both parties testified appellant divided the TD Ameritrade account between themselves in 2016, with appellant receiving $49,000 and appellee receiving $44,000. The magistrate found the transfer of the $44,000 occurred years prior to the parties' separation and, by appellant's own testimony, there were no strings attached to this transfer. The magistrate stated she would "not engage in revisionist history with regard

to this account transfer, nor will the magistrate second guess the joint marital decisions of the parties with respect to an account transfer that occurred * * * years prior to the parties' separation."

**{¶89}** The magistrate clearly found appellee's testimony that she spent the $44,000 on a new water heater for the marital home, repairs to the marital home, the purchase of a new family pet, swimming lessons for appellant's mother, cabin trips, and expenses for the family and the children, to be credible. Accordingly, we find no plain error in the determination that appellee did not commit financial misconduct for the failure to disclose the $44,000 because the funds did not exist as of the date of the divorce filing. It is appellant's position that this testimony is not credible, and appellee's explanation is not plausible. However, the trier of fact is given the duty to determine the credibility of each party's assertions in determining financial misconduct. *Tincher v. Tincher*, 2020-Ohio-3352 (5th Dist.). The determination of whether a witness or evidence is credible rests solely with the finder of fact, and we may not substitute or judgment. *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). If there are inconsistencies in the testimony or evidence offered at trial, the trier of fact is free to believe or disbelieve any or all of the evidence presented. *Bevard v. Bevard*, 2010-Ohio-4210 (5th Dist.).

**{¶90}** Similarly, the magistrate and trial court found no financial misconduct for appellee's alleged "excessive spending" of the $44,000 due to the parties' testimony that there were no "restrictions" or "strings" attached to these funds being distributed among the spouses. We find no plain error in this determination. This determination is based upon the testimony of the parties. We may not substitute our judgment for the trier of fact's determination of credibility. Appellant's ninth assignment of error is overruled.

X.

{¶91}   In his tenth assignment of error, appellant contends the trial court committed plain error by failing to conclude that appellee's transfer of $35,300 from restricted savings accounts to checking accounts (and ultimate spending of it) in violation of the mutual restraining order constituted financial misconduct.

{¶92}   We first note that it is unclear as to whether appellant asked the magistrate to find financial misconduct for appellee's alleged transfer from $35,300 from restricted savings accounts to checking accounts in violation of the restraining order.  This is evidenced by appellant's closing argument, in which "Exhibit A," appellant's proposed awards for financial misconduct, includes three lines for requested financial misconduct findings: "#1 – TD Ameritrade ($44,000), #2 – 529 Plans ($213,895), #3 – Excessive Spending ($233,560)."  However, counsel for appellant did cross-examine appellee on these transfers.

{¶93}   We find no plain error in the magistrate and trial court finding no financial misconduct on the part of appellee.  We again find this is a situation in which the trier of fact found appellee's testimony credible, as is the trial court's province.  Appellee testified she transferred funds from her savings to her checking and from her checking to her savings because her daughters would deposit their paychecks into the Huntington account (joint account between appellee and her daughters), and request appellee pay various bills for them.  Thus, she was continually moving money at various times; however, these were not marital funds, but were separate funds of her children.  Appellant asserts this testimony is not credible.  However, the determination of whether a witness

or evidence is credible rests solely with the finder of fact, and we may not substitute or judgment. *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984).

**{¶94}** While appellant asks this Court to conduct a manifest-weight-of-the-evidence review of the trial court's determination, we cannot do so because appellant did not timely file objections to the magistrate's decision. We cannot conclude that the magistrate's decision, or the trial court's adoption thereof, in this regard amounted to plain error that "seriously affect[ed] the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Brandon,* 2009–Ohio–3818, at ¶ 37, quoting *Davidson,* 79 Ohio St.3d 116, syllabus. Appellant's tenth assignment of error is overruled.

XI.

**{¶95}** In his final assignment of error, appellant contends the trial court committed plain error in failing to conclude that appellee's allegedly excessive spending of $233,559.19 in 4.5 years constituted financial misconduct. He argues that since he managed the money with no issues from 2000-2016 and appellee spent the money in a "non-customary" manner when she took over discretionary spending in 2016, appellee's actions amount to financial misconduct.

**{¶96}** Appellant testified to numerous bank deposits, transfers, and Greenlight transfers which he believes proves his allegations of "excessive spending" by appellee from 2016 through the date when appellee moved out of the marital home in 2021.

**{¶97}** The magistrate found the parties disagreed throughout their marriage how to spend money; however, this constant disagreement was insufficient to meet the burden of financial misconduct. We find no plain error in this determination. Appellant believed

appellee should have been investing and covering their discretionary spending from the funds he gave her. He admits that though this was his expectation, he chose not to check account balances he had access to, but felt since appellee did not ask "permission" or invest it as he thought she should, it was financial misconduct. Appellee testified that while appellant kept certain funds for himself and spent money on his family, the budgeted amount he provided her was not sufficient to meet expenses, and that the bulk of the funds at issue were used for the parties' three children and items around the home.

{¶98} The magistrate made the determination that the spending by appellee was not excessive and no financial misconduct occurred based upon the conflicting testimony of the parties. A determination on financial misconduct rests on the facts and circumstances of each case. *Tincher v. Tincher*, 2020-Ohio-3352 (5th Dist.). As such, the trier of fact is given the duty to determine the credibility of each party's assertions in determining financial misconduct. *Id.* The determination of whether a witness or evidence is credible rests solely with the finder of fact, and we may not substitute our judgment. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). If there are inconsistencies in the testimony or evidence offered at trial, the trier of fact is free to believe or disbelieve any or all of the evidence presented. *Bevard v. Bevard*, 2010-Ohio-4210 (5th Dist.).

{¶99} We find the cases cited by appellant not to be analogous to the instant case. First, none of the cases involve the use of the plain error doctrine; rather, they involved an abuse of discretion review. Further, they involved different factual scenarios than what was presented in this case. *Longo v. Longo*, 2005-Ohio-2069 (11th Dist.) (spending was post-separation; withdrew funds from a home equity line of credit while temporary

restraining order was in place; appellant admitted she was angry and overspent); *O'Neal v. O'Neal*, 2022-Ohio-372 (8th Dist.) (during the marriage, husband withdrew and spent all of his retirement without wife's knowledge); *Carpenter v. Carpenter*, 2007-Ohio-1238 (7th Dist.) (wife took the money she was supposed to use the pay the bills and she did not, causing the home to go into foreclosure and the utilities to be shut off).

{¶100} Appellant essentially requests this Court conduct a manifest-weight-of-the-evidence review of the trial court's determination. We decline to do so since appellant did not file timely objections to the magistrate's decision. We cannot conclude that the magistrate's decision, or the trial court's adoption thereof, in this regard amounted to plain error that "seriously affect[ed] the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Brandon,* 2009–Ohio–3818, at ¶ 37, quoting *Davidson,* 79 Ohio St.3d 116, syllabus. Appellant's eleventh assignment of error is overruled.

{¶101} Based on the foregoing, appellant's first, fourth, fifth, sixth, seventh, eighth, ninth, tenth, and eleventh assignments of error are overruled. Appellant's second and third assignments of error are overruled in part and sustained in part.

{¶102} Accordingly, the September 29, 2023 judgment entry of the Delaware Court of Common Pleas, Domestic Relations Division is affirmed in part, and reversed and remanded in part. Upon remand, the trial court shall only address the narrow issues of (1) determining whether the fact that the parties stipulated to the value of Appellant's Retirement Accounts impacts the division date of Appellant's Retirement Accounts (Nationwide 401(K), Nationwide Pension, Nationwide Deferred Compensation, Nationwide Supplemental Defined Contribution Plan, Appellant's Merrill Lynch IRA) and

(2) if necessary, after determining whether the stipulations impact the division date of Appellant's Retirements Accounts, to provide clarification as to why the date of division of the retirement accounts differs in Exhibit 1 and the judgment entry.

By Gwin, P.J.,

Wise, J., and

King, J., concur